1  ZIEVE, BRODNAX & STEELE, LLP
   Erin M. McCartney, Esq. #308803
2  Leslie M. Klott, Esq. #279622
   30 Corporate Park, Suite 450
3  Irvine, CA 92606
4  Phone:          (714) 848-7920
   Facsimile:      (714) 908-7807
5  Email:          bankruptcy@zbslaw.com

6  Attorneys for Plaintiff, The Bank of New York Mellon FKA The Bank of New York, As Trustee for
   the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2006-7
7

8              UNITED STATES BANKRUPTCY COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                 LOS ANGELES DIVISION

11
   In re:                                          BK Case No.: 2:15-bk-12452-RK
12
   CHUL HYUN GONG, DBA PAX AMERICA               Chapter: 7
13 DEVELOPMENT,
                                                  Adversary Case No.:
14              Debtor.

15                                                **COMPLAINT FOR
                                                  DECLARATORY RELIEF**
16 THE BANK OF NEW YORK MELLON FKA
   THE BANKOF NEW YORK, AS TRUSTEE
17 FOR THE CERTIFICATEHOLDERS OF THE
   CWABS, INC., ASSET-BACKED
18 CERTIFICATES, SERIES 2006-7,

19              Plaintiff,

20 vs.

21 CHUL HYUN GONG, DBA PAX AMERICA
   DEVELOPMENT,
22
                Defendant.
23

24          **COMPLAINT FOR DECLARATORY RELIEF**

25          Plaintiff, The Bank of New York Mellon FKA The Bank of New York, As Trustee for the

26 Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2006-7 ("Plaintiff" or

27 "Movant"), files this Complaint to obtain declaratory relief pursuant to Federal Rule Bankruptcy

28
                                        1

Procedure 7001(9), 11 U.S.C. §362(d) and §105(a) against the Debtor and Defendant Chul Hyun

Gong dba Pax America Development ("Defendant" or "Debtor") and all other interested parties in the

property located at 11034 Lower Azusa Road, El Monte, CA 91731, and alleges as follows:

## I. CORE PROCEEDING

1.      This adversary proceeding relates to the bankruptcy commenced under Chapter 7

captioned, Chul Hyun Gong dba Pax America Development, U.S. Bankruptcy Court, Central District

of California, Los Angeles Division, Case No. 2:15-bk-12452-RK; and seeks to obtain an order

granting relief on all past, pending and future bankruptcy filings under 11 U.S.C. §362(d) related to

the subject property located at 11034 Lower Azusa Road, El Monte, CA 91731.   This is a core

proceeding under 28 U.S.C. §157(b)(2)(A), (I) and (O).

## II. JURISDICTION & VENUE

2.      This Court has subject matter jurisdiction over this adversary case in the bankruptcy

proceeding pursuant to 28 U.S.C. §157(b)(1), 11 U.S.C. §105(a) and §362(d) and FRBP 7001,

because this is a core proceeding to determine that this bankruptcy filing was filed in bad faith and the

Movant is entitled to relief from the automatic stay.

3.      Venue is proper in the Central District of California under 28 U.S.C. §1408.  The Los

Angeles division is proper because the Defendant filed his bankruptcy petition herein.

## III. NATURE OF ACTION

4.      This is an action for declaratory relief arising from the Defendant's clear objective to

participate in a scheme to delay foreclosure proceedings or other actions against subject property in

default located at 11034 Lower Azusa Road, El Monte, CA 91731.

## IV. PARTIES

5.      Plaintiff is a secured creditor of the Defendant in this bankruptcy proceeding and is

requesting extraordinary relief from the automatic stay.

6.      Defendant is a natural person residing in the county of Los Angeles, California.  On February 18, 2015, Defendant filed for relief under Chapter 7 of the United States Bankruptcy Code. Defendant asserted an ownership interest in the subject property located at 11034 Lower Azusa Road, El Monte, CA 91731 and provided notice of the underlying bankruptcy to stop the Plaintiff from proceeding with foreclosure action against the property.

### V.  FACTUAL BACKGROUND

7.      On February 18, 2015, the Defendant filed a voluntary petition for relief under the provisions of Chapter 7 of the United States Bankruptcy Code. See docket case #2:15-bk-12452-RK.

8.      Plaintiff's original borrower, John Pax ("Borrower"), executed and delivered a promissory Note in the original principal amount of $492,000.00 ("Note").  Plaintiff is an entity entitled to enforce the Note.  Plaintiff, directly or through an agent, has possession of the Note.  A copy of the Note is attached hereto as **Exhibit "1".**

9.      Pursuant to the Deed of Trust, all obligations of the Borrower under the Note and Deed of Trust with respect to the Loan are secured by the Property.  A true and correct copy of the Deed of Trust is attached hereto as **Exhibit "2"**.

10.     Plaintiff is the assignee of the Deed of Trust.  True and correct copies of the assignments of the Deed of Trust are attached hereto as **Exhibit "3"**.

11.     The Plaintiff received notice of the underlying bankruptcy proceeding on February 14, 2017 with a grant deed ("Grant Deed") purporting to transfer an ownership interest in the property located at 11034 Lower Azusa Road, El Monte, CA 91731 ("Real Property") to the Defendant, Pax America Development.

12.     According to the notice, an unauthorized Grant Deed was executed and recorded by John Pak, Plaintiff's original borrower, at the Los Angeles County Recorder's office without the consent of Plaintiff and/or this Court on September 28, 2016.  The unauthorized Grant Deed purports to create a beneficial interest in the Real Property in favor of John Pak, Pax America Development

3

*(Defendant/Debtor herein)* and Unimae.  A true and correct copy of the unauthorized Grant Deed is attached hereto as **Exhibit "4"** and incorporated herein by reference.  Despite this purported transaction, Debtor did not list the property in the schedules, statements, or petition for this case.

13.     Several grant deeds and bankruptcy filings are linked to the subject property.[1] Unimae and Defendant's dba Pax America Development, the grant deed recipients, are part of an extensive bad faith bankruptcy filing scheme intended to delay, hinder, and defraud Movant.  The Movant discovered thirty-eight (38) bankruptcy filings under the names of Unimae and Pax America.

14.     The Movant has received multiple notices of related bankruptcy filings ("prior related cases") in the names of the grant deed recipients that have halted the foreclosure process.  Movant proceeded with motions for relief seeking in rem relief in the prior related cases.

15.     On September 30, 2016, the Movant received notice of bankruptcy case 2:16-bk-19608-BB.  The debtor, Andrew Sun dba Sany Kyeun Sun dba Unimae, filed a pro se Chapter 7 on July 20, 2016.  The debtor's dba, Unimae, received a purported interest in the subject property via grant deed.  See **Exhibit "5"**.  Despite this purported transaction, the debtor failed to list the property in the schedules, statements or petition.  Upon receiving notice of the bankruptcy, the Movant postponed the scheduled foreclosure action.  The case was dismissed on October 3, 2016.  A true and correct copy of the Court's docket is attached as **Exhibit "6"**.  Before the case was closed on December 12, 2016, three (3) motions for relief were filed and granted with in rem §362(d)(4) relief in this case.  See **Exhibit "7"**.

---

[1] On March 23, 2010, an unauthorized Deed of Trust with Assignment of Rents was executed and recorded by John Pak, the original borrower, at the Los Angeles County Recorder's office without the consent of Movant and/or this Court.  The unauthorized Deed of Trust with Assignment of Rents purports to create a beneficial interest in the Real Property in favor of Han Kim.  A true and correct copy of the unauthorized Deed of Trust with Assignment of Rents is attached hereto as **Exhibit "4"** and incorporated herein by reference.

On February 17, 2011, an unauthorized Deed of Trust with Assignment of Rents was executed and recorded by John Pak at the Los Angeles County Recorder's office without the consent of Movant and/or this Court.  The unauthorized Deed of Trust with Assignment of Rents purports to create a beneficial interest in the Real Property in favor of Jenny Jung Lee.  A true and correct copy of the unauthorized Deed of Trust with Assignment of Rents is attached hereto as **Exhibit "4"** and incorporated herein by reference.

16.     On October 14, 2016, the Movant received notice of bankruptcy case 2:16-bk-23256-BR.  The debtor, Hee Jae Park dba Unimae, filed a pro se Chapter 7 on October 6, 2016.  The debtor's dba, Unimae, received a purported interest in the property via grant deed.  See **Exhibit "8".**  Despite this purported transaction, the debtor failed to list the property in the schedules, statements or petition.  Upon receiving notice of the bankruptcy, the Movant postponed the scheduled foreclosure sale and filed a motion for relief.  The motion for relief was not contested and the Honorable Barry Russell granted the Movant §362(d)(4) in rem relief.  An order was signed and entered on January 23, 2017 and recorded on January 26, 2017.  See **Exhibit "9".**

17.     On January 11, 2017, the Movant received notice of bankruptcy case 2:16-bk-26969-ER.  The debtor, Frank Jeoun dba Unimae, filed a pro se Chapter 7 on December 29, 2016.  The debtor's dba received a purported interest in the property via grant deed.  See **Exhibit "10".**  Despite this purported transaction, the Debtor failed to list the property in the schedules, statements or petition.  Upon receiving notice of the bankruptcy, the Movant postponed the scheduled foreclosure sale and filed a motion for relief.  The motion for relief was not contested and the Honorable Ernest Robles granted the Movant in rem relief.[2]  Before the Movant was able to submit an order in this case, the Movant received notice of the underlying bankruptcy case no 2:15-bk-12452-RK.

18.     Notice of the bankruptcy case 2:15-bk-12452-RK (received on February 14, 2017) has again stopped the Movant from proceeding with a foreclosure sale.  The Movant is concerned that the Defendant and/or original borrower will continue to thwart the Movant's efforts to proceed as allowed under state law by continuously hijacking bankruptcy cases that pre-date the previously granted in rem orders.

////

////

---

[2] Judge Robles issued a tentative ruling and held that "[t]he Court finds that there is sufficient evidence to grant relief pursuant to 11 U.S.C. §362(d)(4).  The filing of the petition was part of a scheme to delay, hinder, and defraud creditors, which involved the transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval and multiple bankruptcy cases affecting the Property.

5

## VI.  CLAIM FOR RELIEF – Declaratory Judgment

19.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 18 of this Complaint.

20.    A declaratory judgment is appropriate when it will "terminate the controversy" giving rise to the proceeding and it involves an issue of law on undisputed or relatively undisputed facts. The "controversy" must necessarily be "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, 699 (1936).

21.    A declaratory judgment is warranted in this case as the facts are well established and a judgment would terminate the controversy.  A declaratory judgment would allow the Movant to proceed with the foreclosure action without additional delay related to the ongoing bankruptcy scheme designed to stop the Movant from taking any action against the subject property.

22.    Ordinary relief provided for under the plain language of 11 U.S.C. §362(d)(4) was previously granted in prior related cases but is not alone sufficient in this case.  Section 362(d)(4) provides a mechanism to grant in rem relief as to future related in bankruptcy filing affecting the subject property.  11 U.S.C. §362(d)(4) provides for the following:

> (d) on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay— (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either— (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or (B) multiple bankruptcy filings affecting such real property.

23.    Relief under 11 U.S.C. §362(d)(4) is appropriate in this case because as of the time when the scheme was implemented, the debtor's "filing of the petition was part of a scheme [by transferor] to delay, hinder, or defraud creditors." 11 U.S.C. §362(d)(4); In re 4th St. E. Inv'rs, Inc., 474 B.R. 709, 711 (Bankr. C.D. Cal. 2012).    The elements necessary to obtain in rem relief under

Section 362(d)(4) are present in this case.  However, based on the facts presented, additional relief is also warranted.

24.     The Defendant and the Defendant's dba Pax America Development are part of an extensive bad faith bankruptcy filing scheme intended to delay, hinder, and defraud Movant.  The scheme involves transfers of interest in the real property, including to the Defendant, and multiple bankruptcy filings.  A list of bankruptcy cases that affect the Real Property are attached hereto as **Exhibit "11"** and incorporated herein by reference. The foregoing list is not all-inclusive and, instead, represents only a portion of those cases comprising the scheme to delay, hinder, and defraud Movant. The original borrower, Defendant and/or the Defendant's dba will continue to use these tactics to further delay the Movant from taking action against the property unless a bankruptcy order stops the ongoing abuse of the bankruptcy system.

25.     The Movant obtained in rem relief orders in prior related cases but, pursuant to 11 U.S.C. § 362(d)(4), the order is not effective as to the cases that are utilized by the parties before the date of the order.  In this case, a prior in rem order was entered on January 23, 2017 and subsequently recorded.  See **Exhibit "12"**.

26.     Under 11 U.S.C. §362(d)(4), a party of interest may request relief after a notice and hearing with respect to a stay of an act against real property and, if granted, the code provides for the following:

> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years *after the date of the entry of such order by the court*, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

(emphasis added) 11 U.S.C. §362(d)(4).

7

27.     Therefore, the parties may "hijack" or utilize any case filed by Pax America Development, Unimae or any other purported party in interest *before* the date of the order and the Movant would be forced to request relief in each prior case before taking any action.  As evident from the related bankruptcy filing reflected in **Exhibit "13"**, this scheme is likely never-ending.   The parties may continue to hijack any open bankruptcy proceeding without the additional relief as requested herein.

28.     In addition to prospective relief, the Court may grant retroactive relief annulling the automatic stay as permitted for "cause" under §362(d)(1). <u>In re Fjeldsted</u>, 293 B.R. 12, 18 (B.A.P. 9th Cir. 2003).  According to the Court in <u>Fjeldsted</u>, "a bankruptcy court has authority to make excepted to, and to anul, the automatic stay under §326(d)." <u>Id</u>. at 11.  The Court further explained that "in an effort not to upset the goals of the automatic stay in the protection of the debtor, the estate, and the nonmoving creditors who depend on it, have explained that annulment giving retroactive stay relief is a remedy that must be used 'sparingly,' is a 'radical form of relief' or an 'extraordinary action,' or is to be 'applied only in extreme circumstances.'" <u>In re Fjeldsted</u>, 293 B.R. 12, 21 (B.A.P. 9th Cir. 2003).

29.     Based on the facts presented in this case, a radical form of relief is warranted in order to allow the Movant to proceed against the property and preserve the integrity of the Bankruptcy Court.  However, in this case, the Movant did not take any action after receiving the prior and present notices of related bankruptcy filing.  The Movant respectfully yields to the Court's authority and presents this issue for consideration before taking any action.

///

///

///

///

8

30.    Pursuant to 11 U.S.C. §105(a), this Court has the authority to grant the relief requested.  In fact, many Courts have issued blanket relief orders terminating the automatic stay when a bankruptcy filing turns into a clear scheme where properties are being dumped into the proceeding by grant deed transfers, clearly abusing the bankruptcy system.[3]

31.    Section 105(a) expressly states that the court may issue any order or judgment that is necessary or appropriate to carry out the provisions of this title … or to *prevent an abuse of process*." (emphasis added) 11 U.S.C. §105(a).

32.    Some Judges presiding in the United States Bankruptcy Court in the Central District of California have contemplated the relief requested and provided a possible roadmap for Secured Creditors to pursue in those cases presenting extreme bankruptcy abuse.[4]

33.    Approximately sixty (60) Motions for Relief were filed in the underlying bankruptcy case and still counting.  Clearly, the parties are purposefully utilizing the case to stop the Movant from proceeding.

34.    There have been approximately (38) bankruptcy cases filed by Unimae and Pax America Development.

35.    These bankruptcy filings are affecting Movant's interest in the Property, and have only worked to prevent it from exercising its lawful state law remedy to foreclose given the substantial default.

36.    The Court, furthermore, has the authority to issue a ruling that is enforceable in other bankruptcy courts.  The ruling of one bankruptcy court regarding the scope of the automatic stay may be binding in a case pending before a different bankruptcy court.  In re Palmdale Hills Property, LLC, 423 B.R. 655 (9th Circuit BAP 2009).

---

[3] See Amended Blanket Order, Case No. 8:10-bk-20034-ES, Docket Entry #70 entered November 19, 2010; Blanket Order, Case No. 8:12-bk-15186-CB, Docket Entry #81 entered August 10, 2012; Standing Order on the Court's Own Motion, Case No. 2:10-bk-40008-NB, Docket Entry #192 entered on October 24, 2012; Blanket Order Deeming Automatic Stay Lifted as to Any and All Interests in Real Property, Case No. 8:12-bk-10459-ES, Docket Entry #105 entered on April 23, 2012; Blanket Order Deeming Automatic Stay Lifted as to Any and All Interests in Real Property, Case No. 8:12-bk-12333-ES, Docket Entry #105 entered on July 11, 2012; Blanket Order Deeming Automatic Stay Lifted as to Any and All Interests in Real Property, Case No. 8:11-bk-24282-ES, Docket Entry #136 entered on March 5, 2012.

[4] See *In re Ervin*, Case No. 14-bk-18204-NB, Docket No. 311 and Docket No. 188.

9

37.    The facts in this case warrant "extraordinary action" to prevent an abuse of the bankruptcy process.  The original borrower and/or defendants are intentionally using the bankruptcy courts to delay the Movant's efforts to foreclose.

38.    Therefore, this Court may declare a blanket relief order and provide extraordinary prospective and retroactive relief on any and all prior, pending or future bankruptcy proceedings pursuant to 11 U.S.C. §105(a) and §362(d).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court render a judgment as follows:

1.    That the Court order, adjudge, and decree that the automatic stay is terminated under §362(d)(1), (d)(2) and (d)(4);

2.    That pursuant to 11 U.S.C. §105(a), the relief granted under 11 U.S.C. §362(d)(4) be binding on all (1) past, (2) present and (3) future bankruptcy filings for a period of two (2) years after the date of the entry of the order if the Movant records the judgment in the real estate records unless a party in interest moves for relief from such judgment based on changes circumstances or for good cause shown, after notice and a hearing; and

3.    For all other relief that the Court deems just and proper.

Dated: March 16, 2017                                  Zieve, Brodnax & Steele, LLP


                                                      */s/ Erin M. McCartney*
                                                      Erin M. McCartney
                                                      Attorney for Plaintiff, The Bank of New York Mellon
                                                      FKA The Bank of New York, As Trustee for the
                                                      Certificateholders of the CWABS, Inc., Asset-Backed
                                                      Certificates, Series 2006-7

Prepared by: RUBEN GIL

# ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

MAY 26, 2006                    ROWLAN HEIGHTS                    CALIFORNIA
[Date]                          [City]                           [State]

11034 LOWER AZUSA ROAD, El Monte, CA 91731-1409
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 492,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    9.950 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the   first         day of each month beginning on
JULY 01, 2006      . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   JUNE 01, 2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 4,299.48      . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the   first         day of   JUNE, 2008      , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* . The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding EIGHT & 95/100        percentage point(s) (   8.950 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**CALIFORNIA ADJUSTABLE RATE NOTE - LIBOR INDEX -** Single Family
● BC - ARM Note
2D159-CA (12/05)(d)                              Page 1 of 3

EXHIBIT 1

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   11.450   % or less than   9.950   %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF          percentage point(s) (    1.500   %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than   16.950   % or less than   9.950   %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note. My Partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my Partial Prepayment. However, any reduction due to my Partial Prepayment may be offset by an interest rate increase.

[X] I may prepay this Note in full at any time without penalty.

[ ] If within the first                 months after the execution of the Note, I make any prepayment(s) within any 12-month period, the total of which exceeds 20 percent (20%) of the original principal amount of this loan, I will pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds 20 percent (20%) of the original Principal amount of the loan.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000   % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

# EXHIBIT 1

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____     _____

JOHN PAK                                                              -Borrower

_____     _____

-Borrower

_____     _____

-Borrower

_____     _____

-Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF

WITHOUT RECOURSE

COUNTRYWIDE HOME LOANS, INC., A NEW YORK CORPORATION
DOING BUSINESS AS AMERICA'S WHOLESALE LENDER

BY: _____
MICHELE BUCKLANDER
EXECUTIVE VICE PRESIDENT

● BC - ARM Note
2D159-CA (12/05)

**EXHIBIT 1**

**This page is part of your document - DO NOT DISCARD**

**06 1260527**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**06/08/06 AT 08:00am**

**TITLE(S) :**



L E A D    S H E E T

FEE                                D.T.T.

CODE
20

CODE
19

CODE
9____



**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**        **Number of AIN's Shown**

    **THIS FORM IS NOT TO BE DUPLICATED**    

# EXHIBIT 2

FIRST AMERICAN TITLE COMPANY LOS ANGELES

Recording Requested By:
P. WEBBER-JAMES

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

**06  1260527**

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
RUBEN GIL

———————————————— [Space Above This Line For Recording Data] ————————————————

# DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated MAY 26, 2006         , together with all Riders to this document.
(B) **"Borrower"** is
JOHN PAK, A SINGLE MAN

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

VMP -6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291       **Form 3005 1/01**
CONV/VA

06/08/06

EXHIBIT 2

3

Borrower's address is
810 S FLOWER ST #1001, LOS ANGELES, CA 90017
Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
(D) **"Trustee"** is
RECON TRUST COMPANY, N.A.
225 WEST HILLCREST DRIVE MSN TO-02, THOUSAND OAKS, CA 91360
(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) **"Note"** means the promissory note signed by Borrower and dated MAY 26, 2006       . The Note states that Borrower owes Lender
FOUR HUNDRED NINETY TWO THOUSAND and 00/100

Dollars (U.S. $ 492,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JUNE 01, 2036     .
(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) **"Escrow Items"** means those items that are described in Section 3.
(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

06  1260527

EXHIBIT 2



conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY              of           LOS ANGELES          :
[Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]
LOT 3 OF TRACT NO. 53659, IN THE CITY OF EL MONTE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1276, PAGE(S) 98, 99 AND 100 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.   APN: 8570-006-040

SEE EXHIBIT "A" ATTACHED

Parcel ID Number: X                                which currently has the address of
                    11034 LOWER AZUSA ROAD, El Monte                      ,
                              [Street/City]
California 91731-1408 ("Property Address"):
        [Zip Code]

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

EXHIBIT 2

06  1260527

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

06 1260527

**EXHIBIT 2**

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

VMP® -6A(CA) (0207)      CHL (08/05)           Page 5 of 16                        Form 3005 1/01

06  1260527

# EXHIBIT 2

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, hut only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

06 1260527

EXHIBIT 2

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

06  1260527

EXHIBIT 2

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

06  1260527

EXHIBIT 2

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

06 1260527

EXHIBIT 2

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

06  1260527

EXHIBIT 2

\2

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

06/86/90

(VMP) -6A(CA) (0207)          CHL (08/05)          Page 11 of 16          Form 3005 1/01

06  1260527

# EXHIBIT 2

\3

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

90/88/06

06 1260527

# EXHIBIT 2

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**



06 1260527

**EXHIBIT 2**

15

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6A(CA) (0207)        CHL (08/05)        Page 14 of 16        Form 3005 1/01

06 1260527

EXHIBIT 2

\6

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JOHN PAK                                  -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

-BA(CA) (0207)        CHL (08/05)        Page 15 of 16        Form 3005 1/01

06 1260527

EXHIBIT 2

State of California
County of  *Los Angeles*

On *May 30, 2006* _____ before me, *Kevin Lee, Notary Public* }  ss.

personally appeared

*John Pak*

_____

_____

_____

_____

_____, ~~personally known to me~~

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



KEVIN LEE
Commission # 1512228
Notary Public - California
Los Angeles County
My Comm. Expires Sep 10, 2008

06  1260527

EXHIBIT 2

# ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
RUBEN GIL

THIS ADJUSTABLE RATE RIDER is made this TWENTY-SIXTH     day of
MAY, 2006          , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the

**MULTISTATE ADJUSTABLE RATE RIDER - LIBOR INDEX** - Single Family
CONV
● BC - ARM Rider
1U193-XX (06/04)(d)                 Page 1 of 5                  Initials: V.P.

06 1260527

EXHIBIT 2

same date given by the undersigned (the "Borrower") to secure Borrower's Note to
AMERICA'S WHOLESALE LENDER

(the "Lender") of the same date and covering the property described in the Security Instrument and
located at:

11034 LOWER AZUSA ROAD, El Monte, CA 91731-1408

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of      9.950 %.   The   Note   provides   for
changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
    The interest rate I will pay may change on the   first                day of
JUNE, 2008              , and on that day every sixth month thereafter. Each date on which my
interest rate could change is called a "Change Date."

    **(B) The Index**
    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is
the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London
market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as
of the date 45 days before each  Change Date is called the "Current Index."
    If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
    **(C) Calculation of Changes**
    Before each Change Date, the Note Holder will calculate my new interest rate by adding
EIGHT & 95/100                percentage point(s) (    8.950 %) to the Current Index.

CONV
● BC - ARM Rider
1U193-XX (06/04)                     Page 2 of 5

Initials: ⟨signature⟩

06 1260527

EXHIBIT 2



The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.450 % or less than       9.950 % . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF percentage point(s) (      1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than       16.950 % or less than       9.950 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

CONV
• BC - ARM Rider
1U193-XX (06/04)                    Page 3 of 5

Initials: J.P.

06  1260527

EXHIBIT 2

2\

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
• BC - ARM Rider
1U193-XX (06/04)                    Page 4 of 5                    Initials: J.P.

06  1260527

EXHIBIT 2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)

JOHN  PAK                                              - Borrower

_____(Seal)
                                                      - Borrower

_____(Seal)
                                                      - Borrower

_____(Seal)
                                                      - Borrower

CONV
● BC - ARM Rider
1U193-XX (06/04)                    Page 5 of 5

06  1260527

EXHIBIT 2



# PLANNED UNIT DEVELOPMENT RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
RUBEN GIL

THIS PLANNED UNIT DEVELOPMENT RIDER is made this TWENTY-SIXTH       day of
MAY, 2006          , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
-7R (0411)      **CHL (11/04)(d)**        Page 1 of 4              Initials:____
                         VMP Mortgage Solutions, Inc. (800)521-7291        **Form 3150 1/01**

06/89/06

EXHIBIT 2

06 1260527

24

undersigned (the "Borrower") to secure Borrower's Note to
AMERICA'S WHOLESALE LENDER

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:

11034 LOWER AZUSA ROAD
El Monte, CA 91731-1408
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with
other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
AREA KNOWN AS EL MONTE

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners
Association") and the uses, benefits and proceeds of Borrower's interest.

   **PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

   **A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and
(iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay,
when due, all dues and assessments imposed pursuant to the Constituent Documents.

   **B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender
and which provides insurance coverage in the amounts (including deductible levels), for the periods,
and against loss by fire, hazards included within the term "extended coverage," and any other
hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance,
then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly
premium installments for property insurance on the Property; and (ii) Borrower's obligation under
Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent
that the required coverage is provided by the Owners Association policy.

Initials: $\sqrt{.P.}$

@-7R (0411)       **CHL (11/04)**          Page 2 of 4                    **Form 3150 1/01**

06 1260527

EXHIBIT 2

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: J. P.

-7R (0411)    CHL (11/04)    Page 3 of 4    Form 3150 1/01

06 1260527

EXHIBIT 2

26

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
PUD Rider.

_____(Seal)
JOHN PAK                                                    - Borrower

_____(Seal)
                                                           - Borrower

_____(Seal)
                                                           - Borrower

_____(Seal)
                                                           - Borrower

-7R (0411)      CHL (11/04)        Page 4 of 4          Form 3150  1/01

06 1260527

EXHIBIT 2



Title Order Number:
File Number:    2349886

### Exhibit "A"

Real property in the City of El Monte, County of Los Angeles, State of California, described as follows:

LOT 3 OF TRACT NO. 53659, IN THE CITY OF EL MONTE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1276, PAGE(S) 98, 99 AND 100 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 8570-006-040

06/80/90

06 1260527

EXHIBIT 2

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.



**This page is part of your document - DO NOT DISCARD**



## 20110892510



**Pages:
0002**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**07/01/11 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



201107010170003

00004346159



003376498

**SEQ:
06**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t46



Exhibit 3

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD

2



RECORDING REQUESTED BY:

RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT**

**AND TAX STATEMENTS TO:**

RECONTRUST COMPANY
1800 Tapo Canyon Rd., SV2-202
SIMI VALLEY, CA 93063

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST/~~MORTGAGE~~

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

**THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-7**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 05/26/2006, EXECUTED BY: JOHN PAK, A SINGLE MAN,TRUSTOR: TO RECON TRUST COMPANY, N.A., TRUSTEE AND RECORDED AS INSTRUMENT NO. 06 1260527 ON 06/08/2006, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF LOS ANGELES COUNTY, IN THE STATE OF CALIFORNIA.

DESCRIBING THE LAND THEREIN: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED: ~~July 01, 2008~~          MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

**JUN 2 8 2011**

**JUN 2 8 2011**

State of:    **California**              )        BY:
County of:   **Ventura**               )        Kevin Rudolph, Assistant Secretary

On **JUN 2 8 2011** before me, **KENNY VILLAVICENCIO** , notary public, personally appeared
_____**Kevin Rudolph**_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

> **KENNY VILLAVICENCIO**
> Commission # 1900876
> Notary Public - California
> Ventura County
> My Comm. Expires Aug 22, 2014

Signature ~~KENNY VILLAVICENCIO~~                (Seal)

Exhibit 3

*Form asgnmnt (01/09)*

**This page is part of your document - DO NOT DISCARD**



## 20141080589



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/14/14 AT 08:00AM**

| | |
|---|---:|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201410143340021

**00009724154**



006441206

**SEQ:**
**02**

**ERDS - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**     E12

E017210

# EXHIBIT 3

When recorded, mail to:

**SPECIALIZED LOAN SERVICING LLC**
Attn: Foreclosure Department
8742 LUCENT BLVD., SUITE 300
HIGHLANDS RANCH, COLORADO 80129

---

Trustee's Sale No: 05-FSL-134240

### ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned, The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., ASSET-BACKED CERTIFICATES, SERIES 2006-7, erroneously described as "THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-7", in that certain Assignment of Deed of Trust recorded on 07/01/2011, at Los Angeles County, Recording No. 20110892510, by these presents, grants, bargains, sells, assigns, transfers and sets over unto The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., ASSET-BACKED CERTIFICATES, SERIES 2006-7, all beneficial interest under that certain Deed of Trust dated 5/26/2006, and executed by JOHN PAK, A SINGLE MAN, as Grantor, to RECON TRUST COMPANY, N.A., as Trustee, and recorded on 6/8/2006, under Instrument No. 06 1260527, of LOS ANGELES County, State of CALIFORNIA, and covering property more fully described on said Deed of Trust referred to herein.

Together with the Note or Notes therein described or referred to, the money due and to become due therein with interest, and all rights accrued or to accrue under said Deed of Trust.

# EXHIBIT 3

Trustee's Sale No: 05-FSL-134240

Dated: _____9/30/2014_____

The Bank of New York Mellon FKA The Bank of New
York, as Trustee for the certificateholders of the
CWABS, Inc., ASSET-BACKED CERTIFICATES,
SERIES 2006-7, by Specialized Loan Servicing LLC,
as Attorney-in-Fact

BY:_____

       Barry Coon, Vice President

    Name              Title

State of Colorado
County of Douglas
The foregoing instrument was acknowledged before me this ____September 30, 2014____ by

Barry Coon, Vice President & Attorney-in-fact   of Specialized Loan Servicing LLC, a
Delaware Limited Liability Company, on behalf of the LLC.

Jackie Hartman

9/01/2017
(Commission Expiration)

| JACKIE HARTMAN |
| NOTARY PUBLIC |
| STATE OF COLORADO |
| NOTARY ID 19934011619 |
| MY COMMISSION EXPIRES 09/01/2017 |

# EXHIBIT 3

**This page is part of your document - DO NOT DISCARD**



## 20100397317

Pages:
0008

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/23/10 AT 03:57PM**

| | |
|---|---|
| FEES: | 57.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 57.00 |



**L E A D S H E E T**



201003230020173

00002111164



002599671

**SEQ:
01**

DAR - Counter (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

# EXHIBIT 4



RECORDING REQUESTED BY
HAN KIM
5042 WILSHIRE BLVD # 504
LOS ANGELS, CA 90036

AND WHEN RECORDED MAIL TO
HAN KIM
5042 WILSHIRE BLVD # 504
LOS ANGELS, CA 90036

03/23/2010

*20100397317*

# DEED OF TRUST
## WITH ASSIGNMENT OF RENTS AS ADDITIONAL SECURITY

This DEED OF TRUST, made          , between JOHN PAK

herein called TRUSTOR,
whose address is 11034 LOWER AZUSA RD, EL MONTE, CA 91731

**FIDELITY NATIONAL TITLE COMPANY,** a California Corporation, herein called TRUSTEE, and

HAN KIM                                    , herein called BENEFICIARY,
Trustor irrevocably grants, transfers and assigns to Trustee in Trust, with Power of Sale that property in
       County  LOS ANGELES          California, described as:

Lot 3 Tract 53659 in the City of El Monte, as per Map in the Books, inclusive in Maps, in the Office of the County
Recorder of said County.

Together with the rents, issues and profits thereof, subject, however, to the right, power and authority
hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

For the Purpose of Securing (1) payment of the sum of $ 2000.00                       with interest thereon
according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of
Beneficiary, and extensions or renewals thereof; (2) the performance of each agreement of Trustor incorporated
by reference or contained herein or reciting it is so secured; (3) Payment of additional sums and interest thereon
which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or
notes reciting that they are secured by this Deed of Trust.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor
expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all
of the terms and provisions set forth in subdivision A of that certain Fictitious Deed of Trust referenced herein,
and it is mutually agreed that all of the provisions set forth in subdivision B of that certain Fictitious Deed of
Trust

# EXHIBIT 4

DO NOT RECORD

The following is a copy of Subdivisions A and B of the fictitious Deed of
Trust recorded in each County in California as stated in the foregoing Deed
of Trust and incorporated by reference in said Deed of Trust as being a
part thereof as if set forth at length therein.

A. To protect the security of this Deed of Trust, Trustor agrees:
(1)  To keep said property in good condition and repair; not to remove or
demolish any building thereon; to complete or restore promptly and in good
and workmanlike manner any building which may be constructed, damaged or
destroyed thereon and to pay when due all claims for labor performed and
materials furnished therefor; to comply with all laws affecting said
property or requiring any alterations or improvements to be made thereon;
not to commit or permit waste thereof; not to commit, suffer, or permit any
act upon said property in violation of law; to cultivate, irrigate,
fertilize, fumigate, prune and do all other acts which from the character
or use of said property may be reasonably necessary, the specific
enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance
satisfactory to and with loss payable to Beneficiary.  The amount collected
under any fire or other insurance policy may be applied by Beneficiary upon
any indebtedness secured hereby and in such order as Beneficiary may
determine, or at option of Beneficiary the entire amount so collected or
any part thereof may be released to Trustor.  Such application or release
shall not cure or waive any default or notice of default hereunder or
invalidate any act done pursuant to such notice.

(3)  To appear in and defend any action or proceeding purporting to affect
the security hereof or the rights or powers of Beneficiary or Trustee; and
to pay all costs and expenses, including cost of evidence of title and
attorney's fees in a reasonable sum, in any action or proceeding in which
Beneficiary or Trustee may appear, and in any suit brought by Beneficiary
to foreclose this Deed.

(4)  To pay: at least ten days before delinquency all taxes and assessments
affecting said property, including assessments on appurtenant water stock;
when due, all encumbrances, charges and liens, with interest, on said
property or any part thereof, which appear to be prior or superior hereto;
all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein
provided, then Beneficiary or Trustee, but without obligation so to do and
without notice to or demand upon Trustor and without releasing Trustor from
any obligation hereof, may, make or do the same in such manner and to such
extent as either may deem necessary to protect the security hereof,
Beneficiary or Trustee being authorized to enter upon said property for
such purposes; appear in and defend any action or proceeding purporting to

EXHIBIT 4

affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge, or lien which in the judgement of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

(5)   To pay immediately and without demand all sums so expanded by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby, any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B. It is mutually agreed:
(1)   That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him or her in the same manner and with the same effect as above provided for regarding disposition of proceeds of fire or other insurance.

(2)   That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his or her right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(3)   That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension  agreement or any agreement subordinating the lien or charge hereof.

(4) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder.  The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof.  The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(5)   That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be

EXHIBIT 4

appointed by a court, and without regard to the adequacy of any security
for the indebtedness hereby secured, enter upon and take possession of said
property or any part thereof, in his or her own name sue for or otherwise
collect such rents, issues, and profits, including those past due and
unpaid, and apply the same, less costs and expenses of operation and
collection, including reasonable attorney's fees, upon any indebtedness
secured hereby, and in such order as Beneficiary may determine.  The
entering upon and taking possession of said property , the collection of
such rents, issues and profits and the application thereof as aforesaid,
shall not cure or waive any default or notice of default hereunder or
invalidate any act done pursuant to such notice.

(6)   That upon default by Trustor in payment of any indebtedness secured
hereby or in performance of any agreement hereunder, Beneficiary may
declare all sums secured hereby immediately due and payable by delivery to
Trustee of written declaration of default and demand for sale and of
written notice of default and of election to cause to be sold said
property, which notice Trustee shall Cause to be filed for record.
Beneficiary also shall deposit with Trustee this Deed, said note and all
documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the
recordation of said notice of default, and notice of sale having been given
as then required by law, Trustee, without demand on Trustor, shall sell
said property at the time and place fixed by it in said notice of sale,
either as a whole or in separate parcels, and in such order as it may
determine, at public auction to the highest bidder for cash in lawful money
of the United States, payable at time of sale. Trustee may postpone sale of
all or any portion of said property by public announcement at such time and
place of sale, and from time to time thereafter may postpone such sale by
public announcement at the time fixed by the preceding postponement.
Trustee shall deliver to such purchaser its deed conveying the property so
sold, but without any covenant or warranty, express or implied. The
recitals in such deed of any matters or facts shall be conclusive proof of
the truthfulness thereof.  Any person, including Trustor, Trustee, or
Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust,
including cost of evidence of title in connection with sale, Trustee shall
apply the proceeds of sale to payment of: all sums expended under the terms
hereof, not then repaid, with accrued interest at the amount allowed by law
in effect at the date hereof; all other sums then secured hereby; and the
remainder, if any, to the person or persons legally entitled thereto.

(7)   Beneficiary, or any successor in ownership of any indebtedness secured
hereby, may from time to time, by instrument in writing, substitute a
successor or successors to any Trustee named herein or acting hereunder,
which instrument, executed by the Beneficiary and duly acknowledged and
recorded in the office of the recorder of the county or counties where said
property is situated, shall be conclusive proof of proper substitution of
such successor Trustee or Trustees, who shall, without conveyance from the
Trustee predecessor, succeed to all its title, estate, rights, powers and
duties.  Said instrument must contain the name of the original Trustor,

# EXHIBIT 4



Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(8)    That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors, and assigns.  The term Beneficiary shall mean the owner and holder, including pledgees of the note secured hereby, whether or not named as Beneficiary herein.  In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural.

(9)    The Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law.  Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

*DO NOT RECORD*                         REQUEST FOR FULL RECONVEYANCE

TO FIDELITY NATIONAL TITLE COMPANY

The undersigned is the legal owner and holder of the note or notes and of all other indebtedness secured by the foregoing Deed of Trust.  Said note or notes, together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said note or notes above mentioned, and all other evidence of indebtedness secured by said Deed of Trust delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same.

Dated

Please mail Deed of Trust,
Note and Reconveyance to  _____

*Do not lose or destroy this Dead of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.*

EXHIBIT 4

recorded in the book and page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 586 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3778 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 71-10-26 | 615 | Sonoma | 2067 | 427 |
| Calveras | 185 | 338 | Madera | 911 | 136 | San Benito | 309 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego Series 5 Book 1964, Page 149774 | | | | | |

shall inure to and bind the parties hereto, with respect to the property above described. Said agreements, terms and provisions contained in said subdivisions A and B, (identical in all counties) are preprinted on the following pages hereof and are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge thereof does not exceed the maximum allowed by laws.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

_John Pak_

JOHN PAK

EXHIBIT 4

## CERTIFICATE OF ACKNOWLEDGEMENT OF NOTARY PUBLIC

STATE OF CALIFORNIA, )

COUNTY OF Los Angeles )

On _March 23, 2010_ before me, _Elisa T. Guison, Notary Public_ (here insert name and title of the officer), personally appeared _John Park_ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Elisa T. Guison_                    (Seal)

> ELISA T. GUISON
> COMM. # 1767637
> NOTARY PUBLIC - CALIFORNIA
> LOS ANGELES COUNTY
> COMM. EXPIRES SEPT. 14, 2011

## CERTIFICATE OF ACKNOWLEDGEMENT OF NOTARY PUBLIC

STATE OF CALIFORNIA, )

COUNTY OF )

On _____ before me, _____, (here insert name and title of the officer), personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

# EXHIBIT 4

**This page is part of your document - DO NOT DISCARD**



**20110264567**

Pages:
0004



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/17/11 AT 12:41PM**

| | | |
|---|---|---|
| FEES: | | 46.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 46.00 |



**L E A D S H E E T**



2011021700070058

00003775194



003168184

**SEQ:**
**02**

DAR - Counter (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E535856

EXHIBIT 4

RECORDING REQUESTED BY
JOHN PAK
11034 Lower Azusa Rd
El Monte, CA 91731

AND WHEN RECORDED MAIL TO
JENNY JUNG LEE
5042 Wilshire Blvd #504
Los Angeles, CA 90036



# DEED OF TRUST
## WITH ASSIGNMENT OF RENTS AS ADDITIONAL SECURITY

This DEED OF TRUST, made 02/07/2011      , between JOHN PAK, a married man

herein called TRUSTOR,
whose address is 11034 LOWER AZUSA RD, EL MONTE, CA 91731

**FIDELITY NATIONAL TITLE COMPANY**, a California Corporation, herein called TRUSTEE, and

JENNY JUNG LEE, a married woman                      , herein called BENEFICIARY,
Trustor irrevocably grants, transfers and assigns to Trustee in Trust, with Power of Sale that property in
El Monte         County of Los Angeles            California, described as:

Lot 3, Tract 53659 in the City of El Monte, as per Map in the Books, inclusive of Maps, in the Office of the County
Recorder of said County.

Parcel No. 8570-006-040

Together with the rents, issues and profits thereof, subject, however, to the right, power and authority
hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

For the Purpose of Securing (1) payment of the sum of $ 1,000.00 _____ with interest thereon
according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of
Beneficiary, and extensions or renewals thereof; (2) the performance of each agreement of Trustor incorporated
by reference or contained herein or reciting it is so secured; (3) Payment of additional sums and interest thereon
which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or
notes reciting that they are secured by this Deed of Trust.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor
expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all
of the terms and provisions set forth in subdivision A of that certain Fictitious Deed of Trust referenced herein,
and it is mutually agreed that all of the provisions set forth in subdivision B of that certain Fictitious Deed of
Trust

# EXHIBIT 4

*3*

recorded in the book and page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 556 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 152 | 357 | Riverside | 3778 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 71-10-26 | 615 | Sonoma | 2057 | 427 |
| Calveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6113 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego Series 5 Book 1964, Page 149774 | | | | | |

shall inure to and bind the parties hereto, with respect to the property above described. Said agreements, terms and provisions contained in said subdivisions A and B, (identical in all counties) are preprinted on the following pages hereof and are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge thereof does not exceed the maximum allowed by laws.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

*[signature]*

JOHN PAK

**EXHIBIT 4**

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of  Los Angeles

On  Feb 15 2011  before me,  Han Chun Jung, Notary Public ,
(Here insert name and title of the officer)

personally appeared  John  C  Pak ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature of Notary Public

(Notary Seal)

HAN CHUN JUNG
Commission No. 1914891
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires DECEMBER 3, 2014

## ADDITIONAL OPTIONAL INFORMATION

INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

DESCRIPTION OF THE ATTACHED DOCUMENT

Deed of Trust
(Title or description of attached document)

(Title or description of attached document continued)

Number of Pages  2   Document Date  2/7/11

(Additional information)

CAPACITY CLAIMED BY THE SIGNER
☐ Individual (s)
☐ Corporate Officer

(Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

## EXHIBIT 4



**This page is part of your document - DO NOT DISCARD**



## 20161184267



**Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California**

**09/28/16 AT 04:53PM**

Pages:
0003

| | |
|---|---|
| FEES: | 25.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 25.00 |

**LEADSHEET**

201609283250038

00012707546

007835606

**SEQ:
01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**



# EXHIBIT 4



09/28/2016

*20161184267*

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

**JOHN PAK**
**11034 LOWER AZUSA RD.**
**EL MONTE, CA 91731**

THIS SPACE FOR RECORDER'S USE ONLY:

## GRANT DEED

A.P.# 8570-006-040

THE UNDERSIGNED GRANTORS(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $ NONE and is
[ X ] computed on full value of property conveyed, or
[  ] computed on full value less value of liens or encumbrances remaining at time of sale,
[  ] unincorporated area; [ X ] City of    **El Monte**    , and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**JOHN PAK, A Single Man**

hereby GRANT(s) to

**JOHN PAK; PAX AMERICA DEVELOPMENT; UNIMAE**

the following described property in the    **City of El Monte County of Los Angeles**    , State of California, described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT A AND MADE A PART HEREOF EXHIBIT "A"

This is a bona fide gift and the grantor received nothing in return, R&T 11911

DATE    **7/18/2016**

John Pak

A notary public  or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.

State of  CALIFORNIA
County of  LOS ANGELES
On 9-28-2016    before me  JULIE AUYEUNG LEVTOW , a Notary Public personally appeared
JOHN PAK
who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature                                                                (Seal)

JULIE AUYEUNG LEVTOW
Commission #1990427
Notary Public • California
Los Angeles County
My Comm. Expires October 2, 2016

Name (Typed or Printed)                                    [This area for official notarial seal]

Mail Tax Statements to Return Address Above

# EXHIBIT 4

## FACSIMILE TRANSMITTAL SHEET

| TO:<br>**Bankruptcy Dept** | FROM:<br>Brian Kim |
|---|---|
| COMPANY:<br>**Law Offices of Les Zieve** | DATE:<br>September 30, 2016 |
| FAX NUMBER:<br>**714-848-7650** | TOTAL NO. OF PAGES INCLUDING COVER:<br>4 pages total |
| PHONE NUMBER:<br>**714-848-7920** | SENDER'S REFERENCE NUMBER: |
| RE:<br>**Trustee Sale #: 15-36853** | YOUR REFERENCE NUMBER: |

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS:

## **BANKRUPTCY NOTICE**

### RE: SALE SCHEDULED FOR OCTOBER 3, 2016 AT 11:00 AM.

Per Grant deed, Unimac is the legal owner of the property:

**11034 LOWER AZUSA RD**
**EL MONTE, CA 91731**

Please find attached the Ch. 7 bankruptcy notice on the current owner of the property listed above.

Please stop any foreclosure proceeding immediately in pursuant to the **Federal Bankruptcy Code Section 362** to avoid the foreclosure being void & null and to avoid any damages.

With any questions or concerns please feel free to contact me at 323-936-1810 or email me at candhlaw@gmail.com

Thank You,

Brian Kim

# EXHIBIT 5

United States Bankruptcy Court
Central District of California

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was
filed under Chapter 7 of the United States Bankruptcy Code,
entered on 07/20/2016 at 2:39 PM and filed on 07/20/2016.



**Andrew Sun**
18754 Colima Rd
Rowland Heights, CA 91748
SSN / ITIN: xxx-xx-7256
*aka* **Sang Kyeun Sun**
*dba* **Unimae**

The bankruptcy trustee is:

**Richard K Diamond (TR)**
Danning, Gill, Diamond & Kollitz
1900 Avenue of Stars, 11th Floor
Los Angeles, CA 90067-4402
(310) 201-2482

The case was assigned case number 2:16-bk-19608-BB to Judge Sheri Bluebond.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other
actions against the debtor and the debtor's property. Under certain circumstances, the stay may be
limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.
If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be
penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are
available at our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 255 East Temple
Street,, Los Angeles, CA 90012.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting
forth important deadlines.

**Kathleen J. Campbell**
**Clerk, U.S. Bankruptcy**
**Court**



| PACER Service Center |
| :---: |
| **Transaction Receipt** |
| 07/25/2016 12:07:21 |

EXHIBIT 5

**This page is part of your document - DO NOT DISCARD**





# 20161184267

**Pages:
0003**

Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California

**09/28/16 AT 04:53PM**

| | |
|---|---|
| FEES: | 25.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 25.00 |

**LEADSHEET**

201609283250038

00012707546

007835606

**SEQ:
01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

# EXHIBIT 5

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

**JOHN PAK**
**11034 LOWER AZUSA RD.**
**EL MONTE, CA 91731**



09/28/2016

*20161184267*

THIS SPACE FOR RECORDER'S USE ONLY:

## GRANT DEED

A.P.# 8570-006-040

THE UNDERSIGNED GRANTORS(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $ NONE and is
[ X ] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale,
[ ] unincorporated area; [ X ] City of    **El Monte**    , and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**JOHN PAK, A Single Man**

hereby GRANT(s) to

**JOHN PAK; PAX AMERICA DEVELOPMENT; UNIMAE**

the following described property in the    **City of El Monte County of Los Angeles**    , State of California, described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT A AND MADE A PART HEREOF EXHIBIT "A"

This is a bona fide gift and the grantor received nothing in return, R&T 11911

DATE    7/18/2016

**John Pak**

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.

State of    CALIFORNIA
County of   LOS ANGELES
On 9-28-2016    before me    JULIE AH YEUNG LEVTOW , a Notary Public personally appeared
   JOHN PAK
   who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature                                (Seal)



**JULIE AUYEUNG LEVTOW**
Commission #1990427
Notary Public • California
Los Angeles County
My Comm. Expires October 2, 2016

Name (Typed or Printed)                          (This area for official notarial seal)

Mail Tax Statements to Return Address Above

# EXHIBIT 5

**DISMISSED, CLOSED**

## U.S. Bankruptcy Court
## Central District of California (Los Angeles)
## Bankruptcy Petition #: 2:16-bk-19608-BB

|  |  |
|---|---|
| | *Date filed:* 07/20/2016 |
| *Assigned to:* Sheri Bluebond | *Date terminated:* 12/12/2016 |
| Chapter 7 | *Debtor dismissed:* 10/03/2016 |
| Voluntary | *341 meeting:* 09/21/2016 |
| No asset | *Deadline for objecting to discharge:* 10/21/2016 |
| | *Deadline for financial mgmt. course:* 10/21/2016 |

*Debtor disposition:* Dismissed for Other Reason

**Debtor**                                      represented by **Andrew Sun**
**Andrew Sun**                                                  PRO SE
18754 Colima Rd
Rowland Heights, CA 91748
LOS ANGELES-CA
SSN / ITIN: xxx-xx-7256
*aka* **Sang Kyeun Sun**
*dba* **Unimae**


**Trustee**
**Richard K Diamond (TR)**
Danning, Gill, Diamond & Kollitz
1900 Avenue of Stars, 11th Floor
Los Angeles, CA 90067-4402
(310) 201-2482


**U.S. Trustee**
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
| 07/20/2016 | <u>1</u><br>(84 pgs) | Chapter 7 Voluntary Petition for Individuals . Fee Amount $335 Filed by Andrew Sun (Serrano, Vera) CORRECTION: Debtor's alias was not entered at time of filing. It has been updated to reflect the PDF. Modified on 7/20/2016 (Cowan, Sarah). (Entered: 07/20/2016) |
| | | |

# EXHIBIT 6

| | | |
|---|---|---|
| 07/20/2016 | [2](3 pgs) | Meeting of Creditors with 341(a) meeting to be held on 08/22/2016 at 09:00 AM at RM 2, 915 Wilshire Blvd., 10th Floor, Los Angeles, CA 90017. Objections for Discharge due by 10/21/2016. Cert. of Financial Management due by 10/21/2016 for Debtor and Joint Debtor (if joint case) (Serrano, Vera) (Entered: 07/20/2016) |
| 07/20/2016 | [3] | Statement About Your Social Security Number (Official Form 121) Filed by Debtor Andrew Sun . (Serrano, Vera) (Entered: 07/20/2016) |
| 07/20/2016 | [4](1 pg) | Certificate of Credit Counseling Filed by Debtor Andrew Sun . (Serrano, Vera) (Entered: 07/20/2016) |
| 07/20/2016 | [5](2 pgs) | Declaration by Debtor as to Whether Debtor(s) Received Income From an Employer Within 60 Days of Petition (LBR Form F1002-1) Filed by Debtor Andrew Sun . (Serrano, Vera) (Entered: 07/20/2016) |
| 07/20/2016 | [6](1 pg) | Notice to amend or correct debtor(s) name and address (BNC) (Cowan, Sarah) (Entered: 07/20/2016) |
| 07/20/2016 | | Receipt of Chapter 7 Filing Fee - $335.00 by 19. Receipt Number 20209661. (admin) (Entered: 07/21/2016) |
| 07/22/2016 | [7](4 pgs) | BNC Certificate of Notice (RE: related document (s)[2] Meeting (AutoAssign Chapter 7)) No. of Notices: 2. Notice Date 07/22/2016. (Admin.) (Entered: 07/22/2016) |
| 07/22/2016 | [8](2 pgs) | BNC Certificate of Notice (RE: related document (s)[6] Notice to amend or correct debtor(s) name and address (BNC)) No. of Notices: 4. Notice Date 07/22/2016. (Admin.) (Entered: 07/22/2016) |
| 08/23/2016 | 9 | Continuance of Meeting of Creditors (Rule 2003 (e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 09/21/16 at 11:00 AM at RM 2, 915 Wilshire Blvd., 10th Floor, Los Angeles, CA 90017. Debtor absent. (Diamond (TR), Richard) (Entered: 08/23/2016) |

# EXHIBIT 6

| 08/24/2016 | <u>10</u><br>(2 pgs) | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by. (Diamond (TR), Richard) (Entered: 08/24/2016) |
|---|---|---|
| 08/29/2016 | <u>11</u><br>(4 pgs) | Request for special notice Filed by Creditor Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust 2004-11 Mortgage Loan Pass-Through Certificates, Series 2004-11. (Jafarnia, Merdaud) (Entered: 08/29/2016) |
| 08/31/2016 | <u>12</u><br>(4 pgs) | Request for special notice Filed by Creditor HSBC Bank USA, National Association, as trustee, for the J.P. Morgan Mortgage Trust 2007-A5, its assignees and/or successors. (Jafarnia, Merdaud) (Entered: 08/31/2016) |
| 09/12/2016 | <u>13</u><br>(78 pgs; 3 docs) | Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 670 Shafter Way, Los Angeles, CA 90042 . Fee Amount $176, Filed by Creditor Nationstar Mortgage LLC as servicing agent for Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust 2004-11 Mortgage Loan Pass-Through Certificates (Attachments: # <u>1</u> Exhibits part 1 # <u>2</u> Exhibits part 2) (Raftery, Kelly) (Entered: 09/12/2016) |
| 09/12/2016 | | Receipt of Motion for Relief from Stay - Real Property(2:16-bk-19608-BB) [motion,nmrp] ( 176.00) Filing Fee. Receipt number 43281212. Fee amount 176.00. (re: Doc# <u>13</u>) (U.S. Treasury) (Entered: 09/12/2016) |
| | 14 | Notice to Filer of Error and/or Deficient Document **Incorrect hearing date/time/location was selected. THE FILER IS INSTRUCTED TO FILE AN AMENDED NOTICE OF MOTION/HEARING WITH CORRECT HEARING INFORMATION. THE HEARING LOCATION MUST BE COURTROOM 1539, 15TH FLOOR;** (RE: related document(s)<u>13</u> Motion for Relief from Stay - Real Property filed by Creditor Nationstar Mortgage LLC as servicing agent for Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust 2004-11 Mortgage Loan Pass-Through |

# EXHIBIT 6

| 09/13/2016 | | Certificates) (Jackson, Wendy Ann) (Entered: 09/13/2016) |
|---|---|---|
| 09/13/2016 | 15 | Hearing Set (RE: related document(s)13 Motion for Relief from Stay - Real Property filed by Creditor Nationstar Mortgage LLC as servicing agent for Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust 2004-11 Mortgage Loan Pass-Through Certificates) The Hearing date is set for 10/11/2016 at 10:00 AM at Crtrm 1539, 255 E Temple St., Los Angeles, CA 90012. The case judge is Sheri Bluebond (Jackson, Wendy Ann) (Entered: 09/13/2016) |
| 09/16/2016 | 16 (4 pgs) | Notice of Hearing *(Amended) on Motion for Relief from the Automatic Stay* Filed by Creditor Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust 2004-11 Mortgage Loan Pass-Through Certificates, Series 2004-11 (RE: related document(s)13 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 670 Shafter Way, Los Angeles, CA 90042 . Fee Amount $176, Filed by Creditor Nationstar Mortgage LLC as servicing agent for Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust 2004-11 Mortgage Loan Pass-Through Certificates (Attachments: # 1 Exhibits part 1 # 2 Exhibits part 2)). (Jafarnia, Merdaud) (Entered: 09/16/2016) |
| 09/20/2016 | 17 (4 pgs) | Request for special notice Filed by Creditor Wells Fargo Bank, National Association, as Trustee for Structured Asset Mortgage Investments II Inc., Bear Stearns Mortgage Funding Trust 2006-AR2, Mortgage Pass-Through Certificates, Series 2006-AR2. (Jafarnia, Merdaud) (Entered: 09/20/2016) |
| | 18 (62 pgs; 2 docs) | Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 25916 North Voltaire Place, Area of Stevenson Ranch, CA 91381 . Fee Amount $176, Filed by Creditor HSBC Bank USA, National Association, as trustee, for the J.P. Morgan Mortgage Trust 2007-A5, its assignees and/or successors (Attachments: # 1 Exhibits) |

# EXHIBIT 6

| 09/29/2016 | | (Jafarnia, Merdaud) (Entered: 09/29/2016) |
|---|---|---|
| 09/29/2016 | | Receipt of Motion for Relief from Stay - Real Property(2:16-bk-19608-BB) [motion,nmrp] ( 176.00) Filing Fee. Receipt number 43396026. Fee amount 176.00. (re: Doc# 18) (U.S. Treasury) (Entered: 09/29/2016) |
| 09/29/2016 | 19 (5 pgs; 2 docs) | Declaration re: *(Supplemental) of Merdaud Jafarnia, Esq. in Support of Motion for Relief from the Automatic Stay* Filed by Creditor HSBC Bank USA, National Association, as trustee, for the J.P. Morgan Mortgage Trust 2007-A5, its assignees and/or successors (RE: related document(s)18 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 25916 North Voltaire Place, Area of Stevenson Ranch, CA 91381 . Fee Amount $176,). (Attachments: # 1 Exhibits) (Jafarnia, Merdaud) (Entered: 09/29/2016) |
| 09/29/2016 | 20 | Hearing Set (RE: related document(s)18 Motion for Relief from Stay - Real Property filed by Creditor HSBC Bank USA, National Association, as trustee, for the J.P. Morgan Mortgage Trust 2007-A5, its assignees and/or successors) The Hearing date is set for 11/1/2016 at 10:00 AM at Crtrm 1539, 255 E Temple St., Los Angeles, CA 90012. The case judge is Sheri Bluebond (Jackson, Wendy Ann) (Entered: 09/29/2016) |
| 09/30/2016 | 21 (1 pg) | Trustee's Request to Dismiss Debtor(s) for Failure to Appear at 341(a) Meeting of Creditors (Chapter 7) - Dismiss **Debtor** Filed by Trustee Richard K Diamond (TR). (Diamond (TR), Richard) (Entered: 09/30/2016) |
| 10/03/2016 | 22 (1 pg) | ORDER and notice of dismissal for failure to appear at 341(a) meeting - **Debtor** Dismissed. (BNC) Signed on 10/3/2016 (RE: related document (s)2 Meeting (AutoAssign Chapter 7)). (Cowan, Sarah) (Entered: 10/03/2016) |
| | | Chapter 7 Trustee's Report of No Distribution: I, Richard K Diamond (TR), having been appointed trustee of the estate of the above-named debtor(s), report that this case was dismissed or converted. I |

# EXHIBIT 6

| | | |
|---|---|---|
| 10/03/2016 | | have neither received any property nor paid any monies on account of this estate. I hereby certify that the chapter 7 estate of the above-named debtor (s) has been fully administered through the date of conversion or dismissal. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 0 months. Assets Abandoned (without deducting any secured claims): Not Applicable, Assets Exempt: Not Applicable, Claims Scheduled: Not Applicable, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): Not Applicable. Filed by Trustee Richard K Diamond (TR). (Diamond (TR), Richard) (Entered: 10/03/2016) |
| 10/05/2016 | 23 (2 pgs) | BNC Certificate of Notice (RE: related document (s)22 ORDER and notice of dismissal for failure to appear at 341(a) meeting (Option A or Option B) (BNC)) No. of Notices: 6. Notice Date 10/05/2016. (Admin.) (Entered: 10/05/2016) |
| 10/07/2016 | 24 (4 pgs) | Request for special notice Filed by Creditor Deutsche Bank National Trust Company, As Trustee, On Behalf Of The Holders Of The Wamu Mortgage Pass-Through Certificates, Series 2006-Ar4, Its Assignees And/Or Successors, By And Through Its Servicin. (Jafarnia, Merdaud) (Entered: 10/07/2016) |
| 10/11/2016 | 25 | Hearing Held (Bk Motion) (RE: related document (s) 13 Motion for Relief from Stay - Real Property) RULING - CONT'D. TO 11/1/16 @ 10AM; FILE NOTICE OF INTENT TO CONTINUE BY 10/14/16; OPPOSITIONS DUE BY 10/25/16; (Jackson, Wendy Ann) (Entered: 10/11/2016) |
| | 26 (4 pgs; 2 docs) | Declaration re: *(Supplemental) of Merdaud Jafarnia, Esq. in Support of Motion for Relief from Automatic Stay* Filed by Creditor Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust 2004-11 Mortgage Loan Pass-Through Certificates, Series 2004-11 (RE: related document(s)13 Notice of |

# EXHIBIT 6

| | | |
|---|---|---|
| 10/12/2016 | | motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 670 Shafter Way, Los Angeles, CA 90042 . Fee Amount $176,). (Attachments: # 1 Exhibits) (Jafarnia, Merdaud) (Entered: 10/12/2016) |
| 10/21/2016 | 27 (118 pgs; 2 docs) | Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 625 S. Berendo Street, #605, Los Angeles, CA 90005 *with Proof of Service*. Fee Amount $176, Filed by Creditor Barcelona Tower, Inc. (Attachments: # 1 Exhibit) (Estle, Mark) (Entered: 10/21/2016) |
| 10/21/2016 | 28 (3 pgs) | Notice *Of Movant's Intent To Proceed On Motion For Relief From Automatic Stay with Proof of Service* Filed by Creditor Barcelona Tower, Inc. (RE: related document(s)27 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 625 S. Berendo Street, #605, Los Angeles, CA 90005 *with Proof of Service*. Fee Amount $176, Filed by Creditor Barcelona Tower, Inc. (Attachments: # 1 Exhibit)). (Estle, Mark) (Entered: 10/21/2016) |
| 10/21/2016 | | Receipt of Motion for Relief from Stay - Real Property(2:16-bk-19608-BB) [motion,nmrp] ( 176.00) Filing Fee. Receipt number 43541129. Fee amount 176.00. (re: Doc# 27) (U.S. Treasury) (Entered: 10/21/2016) |
| 10/21/2016 | 29 | Hearing Set (RE: related document(s)27 Motion for Relief from Stay - Real Property filed by Creditor Barcelona Tower, Inc.) The Hearing date is set for 11/15/2016 at 10:00 AM at Crtrm 1539, 255 E Temple St., Los Angeles, CA 90012. The case judge is Sheri Bluebond (Jackson, Wendy Ann) (Entered: 10/21/2016) |
| 11/01/2016 | 30 (4 pgs) | Order Granting Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF) (Related Doc # 18 ) Signed on 11/1/2016 (Beauchamp (Cheek), Sonia) (Entered: 11/01/2016) |
| | | |

# EXHIBIT 6

| | | |
|---|---|---|
| 11/01/2016 | <u>31</u><br>(4 pgs) | Order Granting Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF) (Related Doc # <u>13</u> ) Signed on 11/1/2016 (Beauchamp (Cheek), Sonia) (Entered: 11/01/2016) |
| 11/02/2016 | | Receipt of Certification Fee - $11.00 by 03. Receipt Number 20212983. (admin) (Entered: 11/03/2016) |
| 11/03/2016 | <u>32</u><br>(5 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)<u>30</u> Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF)) No. of Notices: 1. Notice Date 11/03/2016. (Admin.) (Entered: 11/03/2016) |
| 11/03/2016 | <u>33</u><br>(5 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)<u>31</u> Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF)) No. of Notices: 1. Notice Date 11/03/2016. (Admin.) (Entered: 11/03/2016) |
| 11/04/2016 | | Receipt of Certification Fee - $11.00 by 03. Receipt Number 20213072. (admin) (Entered: 11/07/2016) |
| 11/08/2016 | <u>34</u><br>(3 pgs) | Amended Order Granting Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF) (Related Doc # <u>13</u> ) Signed on 11/8/2016 (Kaaumoana, William) (Entered: 11/08/2016) |
| 11/10/2016 | <u>35</u><br>(4 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)<u>34</u> Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF)) No. of Notices: 1. Notice Date 11/10/2016. (Admin.) (Entered: 11/10/2016) |
| 11/15/2016 | <u>36</u><br>(4 pgs) | Order Granting Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF) (Related Doc # <u>27</u> ) Signed on 11/15/2016 (Beauchamp (Cheek), Sonia) (Entered: 11/15/2016) |
| | <u>37</u><br>(5 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)<u>36</u> Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF)) |

# EXHIBIT 6

| 11/17/2016 | | No. of Notices: 1. Notice Date 11/17/2016. (Admin.) (Entered: 11/17/2016) |
|---|---|---|
| 11/18/2016 | | Receipt of Certification Fee - $11.00 by 22. Receipt Number 60134923. (admin) (Entered: 11/21/2016) |
| 12/12/2016 | 38 | Bankruptcy Case Closed - DISMISSED. An Order dismissing this case was entered and notice was provided to parties in interest. Since it appears that no further matters are required and that this case remain open, or that the jurisdiction of this Court continue, it is ordered that the Trustee is discharged, bond is exonerated, and the case is closed. (RE: related document(s)18 Motion for Relief from Stay - Real Property filed by Creditor HSBC Bank USA, National Association, as trustee, for the J.P. Morgan Mortgage Trust 2007-A5, its assignees and/or successors, 27 Motion for Relief from Stay - Real Property filed by Creditor Barcelona Tower, Inc.) (Beauchamp (Cheek), Sonia) (Entered: 12/12/2016) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/10/2017 09:48:49 | | | |
| **PACER Login:** | lzieve01:4709007:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:16-bk-19608-BB Fil or Ent: filed To: 3/10/2017 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

# EXHIBIT 6

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| ☐ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | **FILED & ENTERED**<br><br>**NOV 01 2016**<br><br>**CLERK U.S. BANKRUPTCY COURT**<br>**Central District of California**<br>**BY beauchan DEPUTY CLERK** |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re:<br><br>Andrew Sun | CASE NO.: 2:16-bk-19608-BB<br>CHAPTER: 7 |
|---|---|
| | **ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)** |
| | DATE:       November 1, 2016<br>TIME:       10:00 AM<br>COURTROOM: 1539<br>PLACE:     255 E Temple St, Los Angeles, CA 90012 |
| Debtor(s). | |

**Movant:**   HSBC BANK USA, NA, etc.

1. The Motion was:   ☐ Opposed   ☒ Unopposed   ☐ Settled by stipulation

2. The Motion affects the following real property (Property):

   *Street address*:   **25916 North Voltaire Place,**
   *Unit/suite number*:
   *City, state, zip code*:   **Stevenson Ranch, CA 91381**

   Legal description or document recording number (including county of recording): 20071074380, LOS ANGELES COUNTY

   ☐ See attached page.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*      EXHIBIT 7      **F 4001-1.RFS.RP.ORDER**

3.  The Motion is granted under:

   a.  ☒  11 U.S.C. § 362(d)(1)

   b.  ☒  11 U.S.C. § 362(d)(2)

   c.  ☐  11 U.S.C. § 362(d)(3)

   d.  ☒  11 U.S.C. § 362(d)(4). The filing of the bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors that involved:

       (1)  ☒  The transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval; and/or

       (2)  ☒  Multiple bankruptcy cases affecting the Property.

       (3)  ☐  The court   ☐ makes   ☐ does not make   ☐ cannot make
            a finding that the Debtor was involved in this scheme.

       (4)  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, this order shall be binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of this order by the court, except that a debtor in a subsequent case under this title may move for relief from this order based upon changed circumstances or for good cause shown, after notice and a hearing. Any federal, state or local government unit that accepts notices of interests or liens in real property shall accept any certified copy of this order for indexing and recording.

4.  ☒  As to Movant, its successors, transferees and assigns, the stay of 11 U.S.C. § 362(a) is:

   a.  ☒  Terminated as to the Debtor and the Debtor's bankruptcy estate.

   b.  ☐  Modified or conditioned as set forth in Exhibit _____ to this order.

   c.  ☐  Annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5.  ☒  Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable nonbankruptcy law, but may not pursue any deficiency claim against the Debtor or property of the estate except by filing a proof of claim pursuant to 11 U.S.C. § 501.

6.  ☐  Movant must not conduct a foreclosure sale of the Property before (date) _____.

7.  ☐  The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Agreement contained within this order.

8.  ☐  In chapter 13 cases, the trustee must not make any further payments on account of Movant's secured claim after entry of this order. The secured portion of Movant's claim is deemed withdrawn upon entry of this order without prejudice to Movant's right to file an amended unsecured claim for any deficiency. Absent a stipulation or order to the contrary, Movant must return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this order.

9.  ☐  The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, as to the same terms and conditions as to the Debtor.

10. ☒  The 14-day stay as provided in FRBP 4001(a)(3) is waived.

11. This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code.

12. Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014

# EXHIBIT 7

13. Upon entry of this order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

14. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy case concerning the Property for a period of 180 days from the hearing of this Motion

    (a) ☐ without further notice.

    (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

15. ☐ This order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

16. ☐ This order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:

    (a) ☐ without further notice.

    (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

17. ☐ This order is binding and effective in any future bankruptcy case, no matter who the debtor may be

    (a) ☐ without further notice.

    (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

18. ☐ Other (*specify*):

###

Date:    11/01/2016

Sheri Bluebond
United States Bankruptcy Judge

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                                                                              F 4001-1.RFS.RP.ORDER

# EXHIBIT 7

/8

LEGAL DESCRIPTION          EXHIBIT "A" /

THE LAND REFERRED TO HEREIN IS SITUATED IN THE STATE OF CALIFORNIA,
COUNTY OF LOS ANGELES, DESCRIBED AS FOLLOWS:

LOT 90 OF TRACT 33613, IN THE COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 1242 PAGES 1 TO 19
INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.

EXCEPT 1 PERCENT OF ALL OIL, GAS, AND HYDROCARBON SUBSTANCES AS
CONVEYED TO BURNETT WOLFSON IN DEED RECORDED IN BOOK 25197 PAGE
434, OFFICIAL RECORDS.

ALSO EXCEPT THE FOLLOWING INTEREST IN ALL OIL, GAS, AND OTHER
HYDROCARBON SUBSTANCES AS GRANTED TO THE GRANTEES SHOWN BELOW
IN DEEDS RECORDED AS SHOWN BELOW.

BURNETT, WOLFSON GRANTEE 5/6 OF 1 PERCENT INTEREST IN BOOK
33487 PAGE 359, HARRY ROSENBERG, GRANTEE 5/6 OF 1 PERCENT
INTEREST, IN BOOK 33487 PAGE 386, JOSEPH F. FERGUSON, GRANTEE 2
1/2 OF 100 PERCENT INTEREST IN BOOK 33487 PAGE 392, EMANUEL
LOWENFELD, GRANTEE 5/6 OF 1 PERCENT INTEREST, IN BOOK 33487 PAGE
396, ALL OFFICIAL RECORDS.

THE INTEREST CONVEYED WERE CORRECTED BY A DEED EXECUTED BY THE
ABOVE GRANTEES AND RECORDED IN BOOK 38937 PAGE 58, OFFICIAL
RECORDS.

ALSO EXCEPT FROM THAT PORTION OF SAID PARCEL 4 LYING WITHIN THE
LAND DESCRIBED IN DEED RECORDED NOVEMBER 1, 1941 AS INSTRUMENT
NO. 896 IN BOOK 18921 PAGE 53, OFFICIAL RECORDS, 4 PERCENT OF
ALL OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES AS CONVEYED TO
C.G. WILLIS IN THE ABOVE MENTIONED DEED.

EXCEPT THEREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS,
NATURAL GAS, NATURAL GAS RIGHTS, AND OTHER HYDROCARBON BY
WHATSOEVER NAME KNOWN THAT MAY BE WITHIN OR UNDER THE PARCEL OF
LAND HEREIN ABOVE DESCRIBED, TOGETHER WITH THE PERPETUAL RIGHT
OF DRILLING, MINING, EXPLORING, AND OPERATING THEREFOR AND
REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING
THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM
LANDS OTHER THAT THOSE HEREINABOVE DESCRIBED, OIL OR GAS WELLS,
TUNNELS, AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF
THE LAND HEREINABOVE DESCRIBED, AND TO BOTTOM SUCH WHIPSTOCKED
OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER AND
BENEATH OR BEYOND THE EXTERIOR LINES THEREOF, AND TO REDRILL,
EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS OR
MINES, WITHOUT, HOWEVER, THE RIGHT TO DRILL, MINE, EXPLORE AND

07 1074380

Order:
Doc: CALOSA:2007 01074380

Page 18 of 26

Requested By: sarah.rangel, Printed: 8/30/2016 2:21 PM

EXHIBIT 7
15

LEGAL DESCRIPTION

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>JaVonne M. Phillips, Esq. SBN 187474<br>Merdaud Jafarnia, Esq. SBN 217262<br>**McCarthy & Holthus, LLP**<br>1770 Fourth Avenue<br>San Diego, CA 92101<br>Phone (877) 369-6122<br>Fax (619) 685-4811<br>bknotice@mccarthyholthus.com<br><br>☒ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | FOR COURT USE ONLY<br><br>┌─────────────────────┐<br>│ **FILED & ENTERED** │<br>│ │<br>│ NOV 08 2016 │<br>│ │<br>│ CLERK U.S. BANKRUPTCY COURT │<br>│ Central District of California │<br>│ BY kaaumoarDEPUTY CLERK │<br>└─────────────────────┘<br><br>CHANGES MADE BY COURT |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>Andrew Sun,<br><br><br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:16-bk-19608-BB<br>CHAPTER: 7 |
|---|---|
| | **<u>AMENDED</u> ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362<br>(REAL PROPERTY)** |
| | DATE: 11/1/2016<br>TIME: 10:00 AM<br>COURTROOM: 1539<br>PLACE: 255 E. Temple Street, Los Angeles CA |

**Movant:** Nationstar Mortgage LLC as servicing agent for Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust 2004-11 Mortgage Loan Pass-Through Certificates, Series 2004-11

1. The Motion was:    ☐ Opposed    ☒ Unopposed    ☐ Settled by stipulation

2. The Motion affects the following real property (Property):

   *Street address:*    670 Shafter Way
   *Unit/suite number:*
   *City, state, zip code:*  Los Angeles, CA 90042

   Legal description or document recording number (including county of recording): 04 2801990, Los Angeles County, California

   ☐ See attached page.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                     EXHIBIT 7                     F 4001-1.RFS.RP.ORDER

3. The Motion is granted under:

   a. ☒ 11 U.S.C. § 362(d)(1)

   b. ☐ 11 U.S.C. § 362(d)(2)

   c. ☐ 11 U.S.C. § 362(d)(3)

   d. ☒ 11 U.S.C. § 362(d)(4). The filing of the bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors that involved:

      (1) ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval; and/or

      (2) ☒ Multiple bankruptcy cases affecting the Property.

      (3) ☐ The court ☐ makes ☐ does not make ☐ cannot make a finding that the Debtor was involved in this scheme.

      (4) If recorded in compliance with applicable state laws governing notices of interests or liens in real property, this order shall be binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of this order by the court, except that a debtor in a subsequent case under this title may move for relief from this order based upon changed circumstances or for good cause shown, after notice and a hearing. Any federal, state or local government unit that accepts notices of interests or liens in real property shall accept any certified copy of this order for indexing and recording.

4. ☒ As to Movant, its successors, transferees and assigns, the stay of 11 U.S.C. § 362(a) is:

   a. ☒ Terminated as to the Debtor and the Debtor's bankruptcy estate.

   b. ☐ Modified or conditioned as set forth in Exhibit _____ to this order.

   c. ☐ Annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5. ☒ Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable nonbankruptcy law, but may not pursue any deficiency claim against the Debtor or property of the estate except by filing a proof of claim pursuant to 11 U.S.C. § 501.

6. ☐ Movant must not conduct a foreclosure sale of the Property before (*date*) _____.

7. ☐ The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Agreement contained within this order.

8. ☐ In chapter 13 cases, the trustee must not make any further payments on account of Movant's secured claim after entry of this order. The secured portion of Movant's claim is deemed withdrawn upon entry of this order without prejudice to Movant's right to file an amended unsecured claim for any deficiency. Absent a stipulation or order to the contrary, Movant must return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this order.

9. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, as to the same terms and conditions as to the Debtor.

10. ☒ The 14-day stay as provided in FRBP 4001(a)(3) is waived.

11. This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code.

12. Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014

# EXHIBIT 7

F 4001-1.RFS.RP.ORDER

13. Upon entry of this order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

14. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy case concerning the Property for a period of 180 days from the hearing of this Motion

    (a) ☐ without further notice.

    (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

15. ☐ This order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

16. ☐ This order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:

    (a) ☐ without further notice.

    (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

17. ☐ This order is binding and effective in any future bankruptcy case, no matter who the debtor may be

    (a) ☐ without further notice.

    (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

18. ☒ Other (*specify*): **This order amends and supersedes "*Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (Real Property)*" entered on November 1, 2016 at Docket No.31.**

###

Date: November 8, 2016

Sheri Bluebond
United States Bankruptcy Judge

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*   EXHIBIT 7   F 4001-1.RFS.RP.ORDER

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| | **FILED & ENTERED**<br><br>NOV 15 2016<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY beauchamDEPUTY CLERK |
| ☐ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re:<br><br>Andrew Sun | CASE NO.: 2:16-bk-19608-BB |
|---|---|
| | CHAPTER: 7 |
| | **ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)** |
| | DATE:           November 15, 2016<br>TIME:           10:00 AM<br>COURTROOM: 1539<br>PLACE:          255 E Temple St, Los Angeles, CA 90012 |
| Debtor(s). | |

**Movant:**   BARCELONA TOWER, INC.

1.  The Motion was:   ☐ Opposed   ☒ Unopposed   ☐ Settled by stipulation

2.  The Motion affects the following real property (Property):

*Street address:*   625 S. Berendo Street
*Unit/suite number:*   #605
*City, state, zip code:*   Los Angeles, CA 90005

Legal description or document recording number (including county of recording):  11 0301558, LOS ANGELES COUNTY Assessment Lien

☐ See attached page.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                    **EXHIBIT 7**                    **F 4001-1.RFS.RP.ORDER**

3. The Motion is granted under:

   a. ☒ 11 U.S.C. § 362(d)(1)

   b. ☒ 11 U.S.C. § 362(d)(2)

   c. ☐ 11 U.S.C. § 362(d)(3)

   d. ☒ 11 U.S.C. § 362(d)(4). The filing of the bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors that involved:

      (1) ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval; and/or

      (2) ☒ Multiple bankruptcy cases affecting the Property.

      (3) ☐ The court    ☐ makes    ☐ does not make    ☐ cannot make
          a finding that the Debtor was involved in this scheme.

      (4) If recorded in compliance with applicable state laws governing notices of interests or liens in real property, this order shall be binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of this order by the court, except that a debtor in a subsequent case under this title may move for relief from this order based upon changed circumstances or for good cause shown, after notice and a hearing. Any federal, state or local government unit that accepts notices of interests or liens in real property shall accept any certified copy of this order for indexing and recording.

4. ☒ As to Movant, its successors, transferees and assigns, the stay of 11 U.S.C. § 362(a) is:

   a. ☒ Terminated as to the Debtor and the Debtor's bankruptcy estate.

   b. ☐ Modified or conditioned as set forth in Exhibit _____ to this order.

   c. ☐ Annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5. ☒ Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable nonbankruptcy law, but may not pursue any deficiency claim against the Debtor or property of the estate except by filing a proof of claim pursuant to 11 U.S.C. § 501.

6. ☐ Movant must not conduct a foreclosure sale of the Property before (date) _____.

7. ☐ The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Agreement contained within this order.

8. ☐ In chapter 13 cases, the trustee must not make any further payments on account of Movant's secured claim after entry of this order. The secured portion of Movant's claim is deemed withdrawn upon entry of this order without prejudice to Movant's right to file an amended unsecured claim for any deficiency. Absent a stipulation or order to the contrary, Movant must return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this order.

9. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, as to the same terms and conditions as to the Debtor.

10. ☒ The 14-day stay as provided in FRBP 4001(a)(3) is waived.

11. This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code.

12. Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    EXHIBIT 7                              F 4001-1.RFS.RP.ORDER

13. Upon entry of this order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

14. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy case concerning the Property for a period of 180 days from the hearing of this Motion

    (a) ☐ without further notice.

    (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

15. ☐ This order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

16. ☐ This order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:

    (a) ☐ without further notice.

    (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

17. ☐ This order is binding and effective in any future bankruptcy case, no matter who the debtor may be

    (a) ☐ without further notice.

    (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

18. ☐ Other (*specify*):

###

Date:    11/15/2016

Sheri Bluebond
United States Bankruptcy Judge

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014

EXHIBIT 7

# EXHIBIT 1

EXHIBIT 7

## FACSIMILE TRANSMITTAL SHEET

| TO:<br>**Bankruptcy Dept** | FROM:<br>Brian Kim |
|---|---|
| COMPANY:<br>**Law Offices of Les Zieve** | DATE:<br>October 14, 2016 |
| FAX NUMBER:<br>**714-848-7650** | TOTAL NO. OF PAGES INCLUDING COVER:<br>4 |
| PHONE NUMBER:<br>**714-848-7920** | SENDER'S REFERENCE NUMBER: |
| RE:<br>**Trustee Sale #: 15-36853** | YOUR REFERENCE NUMBER: |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

# BANKRUPTCY NOTICE

## RE: SALE SCHEDULED FOR OCTOBER 17, 2016 AT 11:00 AM.

Per Grant deed, Unimac is the legal owner of the property:

### 11034 LOWER AZUSA RD
### EL MONTE, CA 91731

Please find attached the Ch. 7 bankruptcy notice on the current owner of the property listed above.

Please stop any foreclosure proceeding immediately in pursuant to the **Federal Bankruptcy Code Section 362** to avoid the foreclosure being void & null and to avoid any damages.

With any questions or concerns please feel free to contact me at 323-936-1810 or email me at candhlaw@gmail.com

Thank You,

Brian Kim

# EXHIBIT 8

CM/ECF - U.S. Bankruptcy Court (v5.1 - LIVE)                                Page 1 of 1

United States Bankruptcy Court
Central District of California

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was
filed under Chapter 7 of the United States Bankruptcy Code,
entered on 10/06/2016 at 3:22 PM and filed on 10/06/2016.



**Hee Jae Park**
736 S WiltonPl Apt #4
Los Angeles, CA 90005
SSN / ITIN: xxx-xx-2535
*dba* **Unimac**

The bankruptcy trustee is:

**Peter J Mastan (TR)**
550 S Hope Street, Suite 1765

Los Angeles, CA 90071-2627

213-452-4928

The case was assigned case number 2:16-bk-23256-BR to Judge Barry Russell.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other
actions against the debtor and the debtor's property. Under certain circumstances, the stay may be
limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.
If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be
penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are
available at our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 255 East Temple
Street,, Los Angeles, CA 90012.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting
forth important deadlines.

**Kathleen J. Campbell**
**Clerk, U.S. Bankruptcy**
**Court**

# EXHIBIT 8

**This page is part of your document - DO NOT DISCARD**



# 20161184267



**Pages:
0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/28/16 AT 04:53PM**

| | |
|---|---|
| FEES: | 25.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 25.00 |



**LEADSHEET**

201609283250038

00012707546

007835606

**SEQ:
01**

DAR - Counter (Upfront Scan)

**THIS FORM IS NOT TO BE DUPLICATED**



# EXHIBIT 8

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

**JOHN PAK**
**11034 LOWER AZUSA RD,**
**EL MONTE, CA 91731**



09/28/2016

*20161184267*

THIS SPACE FOR RECORDER'S USE ONLY:

## GRANT DEED

A.P.# 8570-006-040

THE UNDERSIGNED GRANTORS(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $ NONE and is
[ X ] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale,
[ ] unincorporated area; [ X ] City of    **El Monte**    , and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**JOHN PAK, A Single Man**

hereby GRANT(s) to

**JOHN PAK; PAX AMERICA DEVELOPMENT; UNIMAE**

the following described property in the    **City of El Monte County of Los Angeles**    , State of California, described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT A AND MADE A PART HEREOF EXHIBIT "A"

This is a bona fide gift and the grantor received nothing in return, R&T 11911

DATE    7/18/2016

John Pak

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.

State of CALIFORNIA
County of LOS ANGELES
On 1-28-2016    before me JULIE AYUEUNG LEVTOW, a Notary Public personally appeared
   JOHN PAK                who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature                                        (Seal)

**JULIE AUYEUNG LEVTOW**
Commission #1990427
Notary Public • California
Los Angeles County
My Comm. Expires October 2, 2016

Name (Typed or Printed)                    (This area for official notarial seal)

Mail Tax Statements to Return Address Above

# EXHIBIT 8

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Zieve, Brodnax & Steele, LLP<br>Erin M. McCartney, Esq. #308803<br>Leslie M. Klott, Esq. #279622<br>30 Corporate Park, Suite 450<br>Irvine, CA 92606<br>Phone: (714) 848-7920<br>Facsimile: (714) 908-7807<br>Email: bankruptcy@zbslaw.com<br><br><br>☒ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | **FILED & ENTERED**<br><br>**JAN 23 2017**<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY fortier    DEPUTY CLERK |

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| In re:<br><br>Hee Jae Park dba Unimae | CASE NO.: 2:16-bk-23256-BR<br><br>CHAPTER: 7 |
|---|---|
| | **ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(REAL PROPERTY)** |
| Debtor(s). | DATE: January 10, 2017<br>TIME: 10:00 a.m.<br>COURTROOM: 1668<br>PLACE: U.S. Bankruptcy Court<br>255 East Temple Street<br>Los Angeles, CA 90012 |

**Movant:** The Bank Of New York Mellon Fka The Bank Of New York, As Trustee For The Certificateholders Of The CWABS, Inc., Asset-Backed Certificates, Series 2006-7

1. The Motion was: ☐ Opposed   ☒ Unopposed   ☐ Settled by stipulation

2. The Motion affects the following real property (Property):

   *Street address:*      11034 Lower Azusa Rd
   *Unit/suite number:*
   *City, state, zip code:*   El Monte, CA 91731

   Legal description or document recording number (including county of recording):
   Document No. 06 1260527 – Recorded on June 8, 2006 / County of Los Angeles

   ☐ See attached page.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                   **EXHIBIT 9**                     **F 4001-1.RFS.RP.ORDER**

3. The Motion is granted under:

   a. ☒ 11 U.S.C. § 362(d)(1)

   b. ☒ 11 U.S.C. § 362(d)(2)

   c. ☐ 11 U.S.C. § 362(d)(3)

   d. ☒ 11 U.S.C. § 362(d)(4). The filing of the bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors that involved:

      (1) ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval; and/or

      (2) ☒ Multiple bankruptcy cases affecting the Property.

      (3) ☒ The court ☐ makes ☒ does not make ☐ cannot make a finding that the Debtor was involved in this scheme.

      (4) If recorded in compliance with applicable state laws governing notices of interests or liens in real property, this order shall be binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of this order by the court, except that a debtor in a subsequent case under this title may move for relief from this order based upon changed circumstances or for good cause shown, after notice and a hearing. Any federal, state or local government unit that accepts notices of interests or liens in real property shall accept any certified copy of this order for indexing and recording.

4. ☒ As to Movant, its successors, transferees and assigns, the stay of 11 U.S.C. § 362(a) is:

   a. ☒ Terminated as to the Debtor and the Debtor's bankruptcy estate.

   b. ☐ Modified or conditioned as set forth in Exhibit _____ to this order.

   c. ☐ Annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5. ☒ Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable nonbankruptcy law, but may not pursue any deficiency claim against the Debtor or property of the estate except by filing a proof of claim pursuant to 11 U.S.C. § 501.

6. ☐ Movant must not conduct a foreclosure sale of the Property before *(date)* _____.

7. ☐ The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Agreement contained within this order.

8. ☐ In chapter 13 cases, the trustee must not make any further payments on account of Movant's secured claim after entry of this order. The secured portion of Movant's claim is deemed withdrawn upon entry of this order without prejudice to Movant's right to file an amended unsecured claim for any deficiency. Absent a stipulation or order to the contrary, Movant must return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this order.

9. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, as to the same terms and conditions as to the Debtor.

10. ☒ The 14-day stay as provided in FRBP 4001(a)(3) is waived.

11. This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code.

12. Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*

**EXHIBIT 9**

F 4001-1.RFS.RP.ORDER

13. Upon entry of this order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

14. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy case concerning the Property for a period of 180 days from the hearing of this Motion

   (a) ☐ without further notice.

   (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

15. ☐ This order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

16. ☐ This order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:

   (a) ☐ without further notice.

   (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

17. ☐ This order is binding and effective in any future bankruptcy case, no matter who the debtor may be

   (a) ☐ without further notice.

   (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

18. ☐ Other (specify):

###

Date: January 23, 2017

Barry Russell
United States Bankruptcy Judge

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                     EXHIBIT 9                          F 4001-1.RFS.RP.ORDER

## FACSIMILE TRANSMITTAL SHEET

| TO:                        | FROM:                                |
|----------------------------|--------------------------------------|
| **Bankruptcy Dept**        | Brian Kim                            |
| COMPANY:                   | DATE:                                |
| **Law Offices of Les Zieve** | January 11, 2017                   |
| FAX NUMBER                 | TOTAL NO. OF PAGES INCLUDING COVER:  |
| **714-848-7650**           | 4                                    |
| PHONE NUMBER:              | SENDER'S REFERENCE NUMBER:           |
| **714-848-7920**           |                                      |
| RE:                        | YOUR REFERENCE NUMBER:               |
| **Trustee Sale #: 15-36853** |                                    |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

# BANKRUPTCY NOTICE

### RE: SALE SCHEDULED FOR JANUARY 12, 2017 AT 11:00 AM.

Per Grant deed, Unimae is the legal owner of the property:

**11034 LOWER AZUSA RD**
**EL MONTE, CA 91731**

Please stop any foreclosure proceeding immediately in pursuant to the **Federal Bankruptcy Code Section 362** to avoid the foreclosure being void & null and to avoid any damages.

Also, please be aware that the homeowner is in the middle of doing a loan modification. Pursuant to the Homeowner Bill of Rights, lenders are prohibited to foreclose while a loan modification is pending review. See below for loan mod contact person's information:

**Suzanna Molina**
**Loan# 0578148063**
**Loss Mitigation Negotiator**
**Ph: 832-775-7694**

# EXHIBIT 10

With any questions or concerns please feel free to contact me at 323-936-1810 or email me at candhlaw@gmail.com

Thank You,

Brian Kim

2

EXHIBIT 10

United States Bankruptcy Court
Central District of California

## Notice of Bankruptcy Case Filing



A bankruptcy case concerning the debtor(s) listed below was
filed under Chapter 7 of the United States Bankruptcy Code,
entered on 12/29/2016 at 3:04 PM and filed on 12/29/2016.

**Frank Jeoun**
353 N Kingsley Dr
Los Angeles, CA 90004
SSN / ITIN: xxx-xx-6996
*dba* **Unimae**



     The bankruptcy trustee is:

     **Peter J Mastan (TR)**
     550 S Hope Street, Suite 1765

     Los Angeles, CA 90071-2627

     213-452-4928

The case was assigned case number 2:16-bk-26969-ER to Judge Ernest M. Robles.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other
actions against the debtor and the debtor's property. Under certain circumstances, the stay may be
limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.
If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be
penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are
available at our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 255 East Temple
Street,. Los Angeles, CA 90012.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting
forth important deadlines.

                                          **Kathleen J. Campbell**
                                          **Clerk, U.S. Bankruptcy**
                                          **Court**

# EXHIBIT 10



09/28/2016

*20161184267*

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

**JOHN PAK**
**11034 LOWER AZUSA RD.**
**EL MONTE, CA 91731**

THIS SPACE FOR RECORDER'S USE ONLY:

# GRANT DEED

A.P.# 8570-006-040

THE UNDERSIGNED GRANTORS(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $ NONE and is
[ X ] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale,
[ ] unincorporated area; [ X ] City of      **El Monte**      , and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**JOHN PAK, A Single Man**

hereby GRANT(s) to

**JOHN PAK; PAX AMERICA DEVELOPMENT; UNIMAE**

the following described property in the      **City of El Monte County of Los Angeles**      , State of California, described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT A AND MADE A PART HEREOF EXHIBIT "A"

This is a bona fide gift and the grantor received nothing in return, R&T 11911

DATE     **7/18/2016**

**John Pak**

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.

State of  CALIFORNIA
County of  LOS ANGELES
On 9-28-2016      before me,  JULIE AUYEUNG LEVTOW , a Notary Public personally appeared
JOHN PAK      who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____     (Seal)

**JULIE AUYEUNG LEVTOW**
Commission #1990427
Notary Public • California
Los Angeles County
My Comm. Expires October 2, 2016

Name (Typed or Printed)      (This area for official notarial seal)

Mail Tax Statements to Return Address Above

# EXHIBIT 10

Repeat-cacb, RepeatPACER

## U.S. Bankruptcy Court
## Central District of California (Los Angeles)
## Bankruptcy Petition #: 2:15-bk-12452-RK

|  |  |
|---|---|
| *Assigned to:* Robert N. Kwan | *Date filed:* 02/18/2015 |
| Chapter 7 | *341 meeting:* 02/24/2016 |
| Voluntary | *Deadline for filing claims:* 07/06/2015 |
| No asset | *Deadline for filing claims (govt.):* 08/17/2015 |
|  | *Deadline for objecting to discharge:* 05/26/2015 |
|  | *Deadline for financial mgmt. course:* 05/26/2015 |

*Debtor*
**Chul Hyun Gong**
2342 Mountain Ave
La Crescenta, CA 91214
LOS ANGELES-CA
SSN / ITIN: xxx-xx-4975
*dba* **Pax America Development**

represented by **Chul Hyun Gong**
PRO SE

*Trustee*
**Wesley H Avery (TR)**
758 E. Colorado Blvd., Suite 210
Pasadena, CA 91101
(626) 395-7576

represented by **Varand Gourjian**
Gourjian Law Group
101 N Brand Blvd Ste 1220
Glendale, CA 91203
818-956-0100
Fax : 818-956-0123
Email: vg@gourjianlaw.com
*TERMINATED: 04/11/2016*

**Jeffrey L Sumpter**
CBIZ Valuation Group LLC
3101 N Central Ave Ste 300
Phoenix, AZ 85012
602-643-0112
Fax : 602-265-7631
Email: jsumpter@epiqtrustee.com

*U.S. Trustee*
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| **Filing Date** | **#** | **Docket Text** |
|---|---|---|
|  |  |  |

# EXHIBIT 11

TrDismRqst

## U.S. Bankruptcy Court
### Central District of California (Los Augeles)
### Bankruptcy Petition #: 2:16-bk-19608-BB

| | |
|---|---:|
| | *Date filed:* 07/20/2016 |
| *Assigned to:* Sheri Bluebond | *341 meeting:* 09/21/2016 |
| Chapter 7 | *Deadline for objecting to discharge:* 10/21/2016 |
| Voluntary | *Deadline for financial mgmt. course:* 10/21/2016 |
| No asset | |

**Debtor**                                                    represented by **Andrew Sun**
**Andrew Sun**                                                              PRO SE
18754 Colima Rd
Rowland Heights, CA 91748
LOS ANGELES-CA
SSN / ITIN: xxx-xx-7256
*aka* **Sang Kyeun Sun**
*dba* **Unimae**

**Trustee**
**Richard K Diamond (TR)**
Danning, Gill, Diamond & Kollitz
1900 Avenue of Stars, 11th Floor
Los Angeles, CA 90067-4402
(310) 201-2482

**U.S. Trustee**
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
| 09/30/2016 | <u>21</u> (1 pg) | Trustee's Request to Dismiss Debtor(s) for Failure to Appear at 341(a) Meeting of Creditors (Chapter 7) - Dismiss **Debtor** Filed by Trustee Richard K Diamond (TR). (Diamond (TR), Richard) (Entered: 09/30/2016) |
| 09/29/2016 | 20 | Hearing Set (RE: related document(s)<u>18</u> Motion for Relief from Stay - Real Property filed by Creditor HSBC Bank USA, National Association, as trustee, for the J.P. Morgan Mortgage Trust 2007-A5, its |

# EXHIBIT 11

# U.S. Bankruptcy Court
## Central District of California (Los Angeles)
### Bankruptcy Petition #: 2:16-bk-23256-BR

|  |  |
|---|---|
| *Assigned to:* Barry Russell | *Date filed:* 10/06/2016 |
| Chapter 7 | *341 meeting:* 12/19/2016 |
| Voluntary | *Deadline for objecting to discharge:* 01/13/2017 |
| No asset | *Deadline for financial mgmt. course:* 01/13/2017 |

**Debtor**
**Hee Jae Park**                                          represented by **Hee Jae Park**
736 S WiltonPl Apt #4                                                    PRO SE
Los Angeles, CA 90005
LOS ANGELES-CA
SSN / ITIN: xxx-xx-2535
*dba* **Unimae**

**Trustee**
**Peter J Mastan (TR)**
550 S Hope Street, Suite 1765
Los Angeles, CA 90071-2627
213-452-4928

**U.S. Trustee**
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
| 10/06/2016 | <u>1</u><br>(83 pgs) | Chapter 7 Voluntary Petition for Individuals . Fee Amount $335 Filed by Hee Jae Park (Collins, Kim S.) (Entered: 10/06/2016) |
| 10/06/2016 | <u>2</u><br>(3 pgs) | Meeting of Creditors with 341(a) meeting to be held on 11/14/2016 at 09:00 AM at RM 2, 915 Wilshire Blvd., 10th Floor, Los Angeles, CA 90017. Objections for Discharge due by 01/13/2017. Cert. of Financial Management due by 01/13/2017 for Debtor and Joint Debtor (if joint case) (Collins, Kim S.) (Entered: 10/06/2016) |
| 10/06/2016 | <u>3</u> | Statement About Your Social Security Number (Official Form 121) Filed by Debtor Hee Jae Park . (Collins, Kim S.) (Entered: 10/06/2016) |
| 10/06/2016 | <u>4</u><br>(1 pg) | Certificate of Credit Counseling Filed by Debtor Hee Jae Park . (Collins, Kim S.) (Entered: 10/06/2016) |
| 10/06/2016 | <u>5</u><br>(2 pgs) | Declaration by Debtor as to Whether Debtor(s) Received Income From an Employer Within 60 Days of Petition (LBR Form F1002-1) Filed by Debtor Hee Jae Park . (Collins, Kim S.) (Entered: 10/06/2016) |

**EXHIBIT 11**

## U.S. Bankruptcy Court
## Central District of California (Los Angeles)
### Bankruptcy Petition #: 2:16-bk-26969-ER

|  |  |
|---|---|
| *Assigned to:* Ernest M. Robles | *Date filed:* 12/29/2016 |
| Chapter 7 | *341 meeting:* 02/03/2017 |
| Voluntary | *Deadline for objecting to discharge:* 04/04/2017 |
| No asset | *Deadline for financial mgmt. course:* 04/04/2017 |

*Debtor*                                                      represented by **Frank Jeoun**
**Frank Jeoun**                                                              PRO SE
353 N Kingsley Dr
Los Angeles, CA 90004
LOS ANGELES-CA
SSN / ITIN: xxx-xx-6996
*dba* **Unimae**

*Trustee*
**Peter J Mastan (TR)**
550 S Hope Street, Suite 1765
Los Angeles, CA 90071-2627
213-452-4928

*U.S. Trustee*
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| **Filing Date** | **#** | **Docket Text** |
|---|---|---|
| 12/29/2016 | <u>1</u><br>(84 pgs) | Chapter 7 Voluntary Petition for Individuals . Fee Amount $335 Filed by Frank Jeoun (Cowan, Sarah) Additional attachment(s) added on 12/29/2016 (Cowan, Sarah). (Entered: 12/29/2016) |
| 12/29/2016 | <u>2</u><br>(3 pgs) | Meeting of Creditors with 341(a) meeting to be held on 02/03/2017 at 10:00 AM at RM 2, 915 Wilshire Blvd., 10th Floor, Los Angeles, CA 90017. Objections for Discharge due by 04/04/2017. Cert. of Financial Management due by 04/04/2017 for Debtor and Joint Debtor (if joint case) (Cowan, Sarah) (Entered: 12/29/2016) |
| 12/29/2016 | <u>3</u><br>(1 pg) | Certificate of Credit Counseling Filed by Debtor Frank Jeoun . (Cowan, Sarah) (Entered: 12/29/2016) |

# EXHIBIT 11

| 12/29/2016 | <u>4</u><br>(2 pgs) | Declaration by Debtor as to Whether Debtor(s) Received Income From an Employer Within 60 Days of Petition (LBR Form F1002-1) Filed by Debtor Frank Jeoun . (Cowan, Sarah) (Entered: 12/29/2016) |
|---|---|---|
| 12/29/2016 | <u>5</u> | Statement About Your Social Security Number (Official Form 121) Filed by Debtor Frank Jeoun . (Cowan, Sarah) (Entered: 12/29/2016) |
| 12/29/2016 | | Receipt of Chapter 7 Filing Fee - $335.00 by 20. Receipt Number 20214680. (admin) (Entered: 12/29/2016) |
| 12/31/2016 | <u>6</u><br>(4 pgs) | BNC Certificate of Notice (RE: related document(s)<u>2</u> Meeting (AutoAssign Chapter 7)) No. of Notices: 3. Notice Date 12/31/2016. (Admin.) (Entered: 12/31/2016) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/11/2017 13:31:13 | | | |
| **PACER Login:** | lzieve01:4709007:0 | **Client Code:** | lzieve01 |
| **Description:** | Docket Report | **Search Criteria:** | 2:16-bk-26969-ER Fil or Ent: filed From: 11/29/2016 To: 1/11/2017 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# EXHIBIT 11





**Bankruptcy Party Search**
Fri Mar 10 14:27:28 2017
26 records found

User: Izieve01
Client:
Search: Bankruptcy Party Search Name UNIMAE All Courts Page: 1

| | Party Name ▽ | Court | Case | Ch | Date Filed | Date Closed | Disposition |
|---|---|---|---|---|---|---|---|
| 1 | Unimae (db) | cacbke | 2:15-bk-26216 | 7 | 10/22/2015 | 01/14/2016 | Dismissed for Other Reason 12/29/2015 |
| 2 | Unimae (db) | cacbke | 2:14-bk-25456 | 7 | 08/12/2014 | 03/16/2015 | Dismissed for Other Reason 10/22/2014 |
| 3 | Unimae (db) | cacbke | 2:15-bk-19158 | 7 | 06/08/2015 | 01/22/2016 | Dismissed for Other Reason 08/13/2015 |
| 4 | Unimae (db) | cacbke | 2:13-bk-32159 | 7 | 09/04/2013 | 02/12/2014 | Dismissed for Other Reason 01/15/2014 |
| 5 | Unimae (db) | cacbke | 2:13-bk-25141 | 7 | 06/10/2013 | 10/17/2013 | Dismissed for Other Reason 08/23/2013 |
| 6 | Unimae (db) | cacbke | 2:13-bk-13130 | 7 | 02/06/2013 | 03/06/2014 | Dismissed for Other Reason 02/04/2014 |
| 7 | UNIMAE (dft) | cacbke | 2:06-ap-01862 | | 08/10/2006 | 04/01/2009 | Judgment Entered by Default |
| 8 | Unimae (db) | cacbke | 2:13-bk-18184 | 7 | 03/29/2013 | 06/20/2013 | Dismissed for Other Reason 05/24/2013 |
| 9 | Unimae (db) | cacbke | 2:13-bk-36993 | 7 | 11/08/2013 | 04/01/2014 | Dismissed for Other Reason 03/26/2014 |
| 10 | Unimae (db) | cacbke | 2:12-bk-37712 | 7 | 06/14/2012 | 12/17/2012 | Dismissed for Other Reason 10/11/2012 |
| 11 | Unimae (db) | cacbke | 2:16-bk-26969 | 7 | 12/29/2016 | | Dismissed for Other Reason 03/02/2017 |
| 12 | Unimae (cr) | cacbke | 1:07-bk-11974 | 7 | 06/13/2007 | 11/24/2010 | Discharge Not Applicable |
| 13 | Unimae (db) | cacbke | 2:16-bk-17990 | 7 | 06/15/2016 | 09/16/2016 | Dismissed for Failure to File Information 07/05/2016 |
| 14 | Unimae (db) | cacbke | 2:09-bk-29921 | 7 | 07/31/2009 | 10/09/2009 | Dismissed for Other Reason 09/30/2009 |
| 15 | Unimae (db) | cacbke | 2:16-bk-19608 | 7 | 07/20/2016 | 12/12/2016 | Dismissed for Other Reason 10/03/2016 |
| 16 | Unimae (db) | cacbke | 2:15-bk-22344 | 7 | 08/05/2015 | 10/26/2015 | Dismissed for Other Reason 10/13/2015 |
| 17 | Unimae (db) | cacbke | 2:12-bk-44601 | 7 | 10/15/2012 | 04/11/2013 | Dismissed for Other Reason 01/24/2013 |
| 18 | Unimae (db) | cacbke | 2:17-bk-12702 | 7 | 03/07/2017 | | |
| 19 | UNIMAE (cd) | cacbke | 2:06-ap-01862 | | 08/10/2006 | 04/01/2009 | Judgment Entered by Default |
| 20 | Unimae (db) | cacbke | 2:16-bk-10373 | 7 | 01/12/2016 | 05/10/2016 | Dismissed for Other Reason 03/15/2016 |
| 21 | Unimae (db) | cacbke | 2:12-bk-29051 | 7 | 05/01/2012 | 10/30/2012 | Dismissed for Other Reason 08/06/2012 |
| 22 | Unimae (db) | cacbke | 2:16-bk-23256 | 7 | 10/06/2016 | | Dismissed for Other Reason 12/21/2016 |
| 23 | Unimae (db) | cacbke | 2:14-bk-16037 | 7 | 03/31/2014 | 06/13/2014 | Dismissed for Other Reason 05/30/2014 |
| 24 | Unimae (db) | cacbke | 2:14-bk-21316 | 7 | 06/10/2014 | 07/24/2015 | Dismissed for Other Reason 06/01/2015 |
| 25 | UNIMAE (cd) | cacbke | 2:06-ap-01862 | | 08/10/2006 | 04/01/2009 | Judgment Entered by Default |
| 26 | Unimae (db) | cacbke | 2:16-bk-13545 | 7 | 03/21/2016 | 07/08/2016 | Dismissed for Other Reason 06/02/2016 |

| | Receipt 03/10/2017 14:27:29 272229926 |
|---|---|
| User Izieve01 | |
| Client | |
| Description Bankruptcy Party Search | |
| Name UNIMAE All Courts Page: 1 | |
| You have previously been billed for this page. | |
| Pages 1 ($0.00) | |



**PACER**
Case Locator

Bankruptcy Party Search
Fri Mar 10 14:29:35 2017
12 records found

🔊 Browse Aloud

User: lzieve01
Client:
Search: Bankruptcy Party Search Name PAX AMERICA DEVELOPMENT All Courts Page: 1

| Party Name ▼ | Court | Case | Ch | Date Filed | Date Closed | Disposition |
|---|---|---|---|---|---|---|
| 1 Pax America Development (db) | cacbke | 2:14-bk-32741 | 7 | 12/09/2014 | 03/13/2015 | Dismissed for Other Reason 02/20/2015 |
| 2 PAX AMERICA DEVELOPMENT, LLC. (db) | cacbke | 2:10-bk-62980 | 7 | 12/12/2010 | 03/21/2014 | Discharge Not Applicable |
| 3 Pax America Development (db) | cacbke | 2:14-bk-28152 | 7 | 09/24/2014 | 09/26/2015 | Dismissed for Other Reason 11/25/2014 |
| 4 Pax America Development (db) | cacbke | 2:15-bk-12452 | 7 | 02/18/2015 | | |
| 5 Pax America Development (db) | cacbke | 2:14-bk-11276 | 7 | 01/23/2014 | 05/05/2014 | Dismissed for Failure to File Information 03/28/2014 |
| 6 PAX America Development (db) | cacbke | 2:13-bk-13280 | 7 | 02/08/2013 | 04/30/2013 | Dismissed for Other Reason 04/08/2013 |
| 7 Pax America Development (db) | cacbke | 2:14-bk-23028 | 7 | 07/08/2014 | 02/10/2015 | Dismissed for Other Reason 09/22/2014 |
| 8 Pax America Development (db) | cacbke | 2:13-bk-36691 | 7 | 11/05/2013 | 03/24/2014 | Dismissed for Other Reason 01/08/2014 |
| 9 Pax America Development (db) | cacbke | 2:13-bk-19447 | 7 | 04/11/2013 | 07/31/2013 | Dismissed for Other Reason 06/21/2013 |
| 10 Pax America Development (db) | cacbke | 2:13-bk-26527 | 7 | 06/26/2013 | 09/17/2013 | Dismissed for Other Reason 08/23/2013 |
| 11 PAX America Development (db) | cacbke | 2:13-bk-31459 | 7 | 08/27/2013 | 11/22/2013 | Dismissed for Other Reason 10/24/2013 |
| 12 Pax America Development (db) | cacbke | 2:14-bk-17883 | 7 | 04/24/2014 | 09/18/2014 | Dismissed for Other Reason 06/30/2014 |

Receipt 03/10/2017 14:29:36 272231154

User lzieve01
Client
Description Bankruptcy Party Search
                    Name PAX AMERICA DEVELOPMENT All Courts Page: 1
Pages 1 ($0.10)

# EXHIBIT 11

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Zieve, Brodnax & Steele, LLP<br>Erin M. McCartney, Esq. #308803<br>Leslie M. Klott, Esq. #279622<br>30 Corporate Park, Suite 450<br>Irvine, CA 92606<br>Phone: (714) 848-7920<br>Facsimile: (714) 908-7807<br>Email: bankruptcy@zbslaw.com<br><br>☒ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | **FILED & ENTERED**<br><br>**JAN 23 2017**<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY fortier     DEPUTY CLERK |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| In re:<br><br>Hee Jae Park dba Unimae<br><br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:16-bk-23256-BR<br>CHAPTER: 7 |
|---|---|
| | **ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(REAL PROPERTY)** |
| | DATE: January 10, 2017<br>TIME: 10:00 a.m.<br>COURTROOM: 1668<br>PLACE: U.S. Bankruptcy Court<br>255 East Temple Street<br>Los Angeles, CA 90012 |

**Movant:** The Bank Of New York Mellon Fka The Bank Of New York, As Trustee For The Certificateholders Of The CWABS, Inc., Asset-Backed Certificates, Series 2006-7

1. The Motion was:  ☐ Opposed  ☒ Unopposed  ☐ Settled by stipulation

2. The Motion affects the following real property (Property):

    *Street address:*      11034 Lower Azusa Rd
    *Unit/suite number:*
    *City, state, zip code:*   El Monte, CA 91731

    Legal description or document recording number (including county of recording):
    Document No. 06 1260527 – Recorded on June 8, 2006 / County of Los Angeles

    ☐ See attached page.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

3.  The Motion is granted under:

    a.  ☒  11 U.S.C. § 362(d)(1)

    b.  ☒  11 U.S.C. § 362(d)(2)

    c.  ☐  11 U.S.C. § 362(d)(3)

    d.  ☒  11 U.S.C. § 362(d)(4). The filing of the bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors that involved:

        (1)  ☒  The transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval; and/or

        (2)  ☒  Multiple bankruptcy cases affecting the Property.

        (3)  ☒  The court  ☐ makes  ☒ does not make  ☐ cannot make
a finding that the Debtor was involved in this scheme.

        (4)  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, this order shall be binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of this order by the court, except that a debtor in a subsequent case under this title may move for relief from this order based upon changed circumstances or for good cause shown, after notice and a hearing. Any federal, state or local government unit that accepts notices of interests or liens in real property shall accept any certified copy of this order for indexing and recording.

4.  ☒  As to Movant, its successors, transferees and assigns, the stay of 11 U.S.C. § 362(a) is:

    a.  ☒  Terminated as to the Debtor and the Debtor's bankruptcy estate.

    b.  ☐  Modified or conditioned as set forth in Exhibit _____ to this order.

    c.  ☐  Annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5.  ☒  Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable nonbankruptcy law, but may not pursue any deficiency claim against the Debtor or property of the estate except by filing a proof of claim pursuant to 11 U.S.C. § 501.

6.  ☐  Movant must not conduct a foreclosure sale of the Property before (date) _____.

7.  ☐  The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Agreement contained within this order.

8.  ☐  In chapter 13 cases, the trustee must not make any further payments on account of Movant's secured claim after entry of this order. The secured portion of Movant's claim is deemed withdrawn upon entry of this order without prejudice to Movant's right to file an amended unsecured claim for any deficiency. Absent a stipulation or order to the contrary, Movant must return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this order.

9.  ☐  The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, as to the same terms and conditions as to the Debtor.

10. ☒  The 14-day stay as provided in FRBP 4001(a)(3) is waived.

11. This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code.

12. Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014

EXHIBIT 12

13. Upon entry of this order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

14. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy case concerning the Property for a period of 180 days from the hearing of this Motion

   (a) ☐ without further notice.

   (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

15. ☐ This order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

16. ☐ This order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:

   (a) ☐ without further notice.

   (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

17. ☐ This order is binding and effective in any future bankruptcy case, no matter who the debtor may be

   (a) ☐ without further notice.

   (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

18. ☐ Other (*specify*):

###

Date: January 23, 2017

Barry Russell
United States Bankruptcy Judge

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                        EXHIBIT 12                        F 4001-1.RFS.RP.ORDER